GOOLSBY *v.* THE STATE.

1. Independent facts discovered in consequence of an incriminatory statement made by a prisoner are admissible in evidence against him, unless it appears that criminal violence was used in procuring such incriminatory statements or making the discovery. And where such independent facts are admissible, so much of the prisoner's acts and declarations as are necessary to account for the discovery and explain the manner of it are admissible for this purpose. They count for nothing as incriminatory statements or confessions, if obtained under constraint, and as such are to be wholly disregarded.

2. Where a defendant is on trial for murder, and in his statement to the jury admits his presence at the homicide but contends that another person did the killing, the testimony of such other person to the effect that he was elsewhere at the time of the killing is competent evidence in rebuttal of the prisoner's statement.

3. The excerpts from the court's charge, considered in connection with their context, are not erroneous.

4. The evidence warranted the verdict.

Submitted October 18,—Decided November 17, 1909.

Indictment for murder. Before Judge Reagan. Upson superior court. June 28, 1909.

*W. Y. Allen, Claude Worrill,* and *James D. Davis,* for plaintiff in error.

*John C. Hart, attorney-general,* and *J. W. Wise, solicitor-general,* contra.

EVANS, P. J. George Goolsby was convicted of the murder of Will Parkman, and sentenced to be hanged. He moved for a new trial on the grounds, that the verdict was against the evidence, that certain illegal testimony was admitted, and that the court erred in charging the jury. His motion was overruled, and he excepted.

1. Over objection the court allowed a witness to testify: "George Goolsby asked me to do him a favor, and said he took me to be his friend. I told him I was, and would do him a favor. I told him, if he would tell me where his clothes were, that I would get them and burn them up. He told me where they were, but would not do so until I had promised him that I would get them and burn them up. He told me to look in his house in the far room and get his pants which were under the bench under some broom straw, and then after I had found them to go down and look where we got some plums on Sunday and look in the ditch and 'you will find my overalls and jumper where I have kicked some dirt on them.' He told me to get them and take them to my house and burn them up, and when he got out he would pay me." The objection urged against the reception of this evidence was that it was not a voluntary statement, but was induced by a promise on the part of the witness that if the defendant would tell him where to find the clothes of the deceased, he would burn them. The court allowed another witness to testify: "I showed him [George Goolsby] the clothes, and he said, 'Well, Cap, you have got me.' I told him I wanted him to tell me where the negro was. He said: 'Well, Cap, if you don't let them hurt me, I will tell you.' I guaranteed him I would let no one hurt him. He then said, 'Go get John Redman, and I will tell you all about it.' I locked the door and went and got Redman, and when I brought him back there, George said he was not the man, that it was Emmett Nipper. He said Emmett killed him and he threw him in the river. George went with me and showed me where the body was."

The objection to this testimony was that the inculpatory statement was induced by fear, and only made upon assurance that he would be protected from violence. The record does not disclose that any violence was threatened or to be apprehended, or that any coercion was used.

Neither of these statements amounts to a plenary confession of guilt, though they are of an incriminatory nature. In an incriminatory statement only one or more facts entering into the criminal act is admitted. *Owens* v. *State,* 120 *Ga.* 298. But, as remarked by Lewis, J., in *Fuller* v. *State,* 109 *Ga.* 811, "The sounder view of the law touching the admissibility of such declarations on the part of one charged with crime is to exclude them if not voluntarily made, upon the same principle that the defendant's statement would be excluded if it amounted to a direct confession of guilt." There is nothing in the record, beyond what appears in the quoted extracts, tending to show that these statements of the accused were not free and voluntary. This testimony was admissible. The bloody clothes of the defendant were found at the place where the defendant said he concealed them, and were produced at the trial. Also it was proved that the corpse of Parkman was found in the river where pointed out by the defendant. In *Rusher* v. *State,* 94 *Ga.* 363, it was held that "The well-established rule, that independent facts discovered in consequence of a constrained confession made by a prisoner are admissible in evidence against him, is of force in this State, unless it appears that criminal violence was used in procuring the confession or making the discovery. And where such independent facts are admissible, so much of the prisoner's acts and declarations as are necessary to account for the discovery and explain the manner of it are admissible also, but solely for this purpose. They count for nothing as confessions, and as such are to be wholly disregarded." This is but an elaboration of the principle embodied in the Penal Code, §1008. The admissions were admissible, not as a confession, but as being part of the res gestæ of the independent evidentiary facts discovered in consequence of the information imparted by the defendant.

2. In his statement the defendant admitted his presence at the scene of the homicide at the time of its commission. He said that Emmett Nipper killed the deceased and compelled him to

throw the dead body in the river.   In rebuttal of this part of his statement, the State was allowed to prove by Emmett Nipper that he "was with Walter Howard from 11:30 p. m. at Henry Holmes' house, and was not with George Goolsby at all that day."   This testimony was relevant and clearly in rebuttal of the defendant's contention that Nipper and not he killed the deceased, and it showed that Nipper was elsewhere when the killing occurred.

3.   Exception is taken to the following excerpts from the court's charge:  "The real question, gentlemen, after all is whether your minds as conscientious jurors are satisfied beyond a reasonable doubt of his guilt," and (referring to the defendant's statement at the trial) "It is not delivered under oath, and hence the defendant incurs no penalty should he not speak the truth."   These extracts from the court's charge are segregated from their context, and when considered in connection therewith are not erroneous. See Penal Code, §§ 987, 1010.

4. The evidence portrays a shocking murder. A thirteen-year old boy leaves his home in the morning with $9.50 in money; at noon he is seen in the company of the defendant; that night the defendant in paying a debt exhibits $9.50 of the same kind and denomination of money which the dead boy had.   The boy's throat is cut and his body thrown in the river, where it is found a day or two afterwards with no money upon his person.   The defendant attempted to suborn a witness to account for his possession of the money.   The clothes which the defendant wore were saturated with blood and concealed by him.   These are some of the features of the homicide as developed on the trial.

*Judgment affirmed.   All the Justices concur.*