### 10552.   BARNES *v.* THE STATE.

BLOODWORTH, J. 1. The indictment in its formal parts followed section 954 of the Penal Code of 1910. It also named the accused, showed the date and the venue of the offense, and further alleged that the accused "did . . unlawfully and with malice aforethought kill and murder [a named person] by shooting him . . with a pistol." Such an indictment sufficiently charges the offense of murder. *Thomas* v. *State,* 71 *Ga.* 47, 48 (5). It also embraces the minor offense of voluntary manslaughter. *Reynolds* v. *State,* 1 *Ga.* 222 (1); *Watson* v. *State,* 116 *Ga.* 607 (43 S. E. 32). Notwithstanding the language of the code-sections defining these offenses, it is not necessary to allege in the indictment that the accused was "of sound memory and discretion," or that the person killed was "a human being," or was "in the peace

of the State." *Dumas* v. *State*, 63 *Ga.* 600 (1); *Sutherland* v. *State*, 121 *Ga.* 591 (49 S. E. 781). The demurrer to the indictment was therefore properly overruled.

2. Pending a motion for a new trial by one who has been indicted for murder and been convicted of voluntary manslaughter, it is within the sound discretion of the presiding judge to grant or refuse admission to bail upon application therefor by the movant. *Crumley* v. *Gibbs*, 149 *Ga.* 119 (99 S. E. 297).

3. While the prisoner alone can put his general character in issue in any criminal case, yet he can do so as effectively by his statement to the court and jury as by sworn testimony introduced in his behalf. *Jackson* v. *State*, 76 *Ga.* 551; *Doyle* v. *State*, 77 *Ga.* 515 (2); *Crawley* v. *State*, 137 *Ga.* 777 (74 S. E. 537).

4. In any criminal case evidence may be offered by the State to rebut any material fact asserted by the prisoner in his statement to the court and jury. *Doyle* v. *State*, supra; *Goolsby* v. *State*, 133 *Ga.* 427 (2) (66 S. E. 159). Good character is such a fact (*Shropshire* v. *State*, 81 *Ga.* 589, 8 S. E. 450), and an assertion of good character by the prisoner in his statement, or a narrative therein of facts, with an argument deduced therefrom to show his general good character, authorizes the introduction of evidence to the contrary.

5. In view of the principles announced in the two preceding paragraphs, that portion of the prisoner's statement set out in the record put his general character in issue, and authorized the introduction of evidence to the contrary.

6. It was not error to refuse the request to charge on disparity of size. *Alexander* v. *State*, 118 *Ga.* 26, (3), 28 (44 S. E. 851). See *Strickland* v. *State*, 98 *Ga.* 84 (25 S. E. 908). (LUKE, J., dissents.)

7. All the assignments of error have been considered; the evidence authorized the verdict, and for no reason assigned was it error to overrule the motion for a new trial.

    *Judgment affirmed. Broyles, C. J., concurs. Luke, J., dissents.*

    DECIDED NOVEMBER 6, 1919.

    Conviction of manslaughter; from McDuffie superior court— Judge Henry C. Hammond. April 1, 1919.

    Application for certiorari was denied by the Supreme Court.

    *Sam L. Olive, Hines, Hardwick & Jordan, B. J. Stephens,* for plaintiff in error.

    *A. L. Franklin, solicitor-general, J. P. Burnside, John T. West, John M. Graham,* contra.

    LUKE, J. I concur in each of the rulings of the majority of the court, except the ruling announced in paragraph 6 of the decision. The plaintiff in error was indicted by the grand jury of McDuffie county for the offense of murder, it being alleged in the indictment "that the said John M. Barnes, in the county aforesaid, on the 3rd day of February, nineteen hundred and nineteen, with force and arms, did then and there unlawfully and with malice aforethought

kill and murder one J. O. J. Lewis by shooting him in the body with a pistol, contrary to the laws of said State, the good order, peace, and dignity thereof." To that indictment the accused demurred generally, contending that no offense was set forth, and specially because it was not alleged that at the time of the homicide the accused was "of sound memory and discretion," or that the decedent was "in the peace of the State." The demurrer was overruled and exceptions pendente lite were taken. Upon trial the accused was convicted of voluntary manslaughter. He then moved for a new trial and applied for admission to bail. His application for admission to bail being denied, he excepted pendente lite; and his motion for a new trial being overruled, he brings the case here for review. Other facts, so far as they are material here, will be set out in connection with the points decided.

1, 2. The first and second paragraphs of the decision need no elaboration.

3-5. After the prisoner had made his statement the court permitted a number of witnesses to testify as to his general bad character, and particularly as to his character for violence. This evidence was admitted on the theory that the prisoner's statement had raised the issue, and was admitted over the objections, first, that the issue could not be so raised, and, second, that the issue had not been so raised, even if, under the law, it could be done. Numerous grounds of the amended motion for a new trial complained of the admitting of such evidence over the objections stated. That portion of the prisoner's statement here in point was as follows: "My residence in this community covers a period of nearly forty years after I became of age, and during that entire period I have never had a fight with any one, nor was there even a semblance of a fight with any one, with the exception of a trivial affair with the late Ira Farmer, in which he struck me, and in which no weapons were drawn upon either side. Afterwards I became postmaster at Thomson, and held the place for years. During all that time I was not engaged in any quarrels, broils, or fights. Later I was United States marshal, under Judge Emory Speer, and for about nine years was marshal and revenue officer, in which positions there is so likely to be conflicts with lawbreakers and with others, and in which shootings and killings so often occur in the course of what the marshal and his deputies con-

sider the performance of duty. I was so extremely careful of human life that it was never necessary for me to lay the hand of violence upon a human being. Never did it become necessary for me to even point a pistol at any one, much less to fire it. I stood so well as a man and as a citizen that the controlling powers in the county placed my name on the grand-jury list, and the grand jury itself, composed entirely of democrats, had repeatedly chosen me for foreman, although it was well known that I was a republican. Gentlemen, as I may have told you before, I have always lived among you. I challenge any respectable member of this community; who is not my embittered and deadly enemy, to say whether I have been guilty of dirty work of any kind, whether I have not always stood for what I considered clean, honest, and upright, and whether I have not always taken sides with the poor and oppressed. If you think that such a man would have no more sense and no more manhood than to commit deliberately a cold-blooded murder upon an unarmed man, you will, of course, find me guilty. But I again challenge the prosecution to prove me a man of this character."

In view of the principles announced and the authorities cited in the foregoing decision, the trial court was clearly right in holding that the portions of the prisoner's statement above set out put his character in issue and authorized the introduction of the evidence of which complaint is now made. A prisoner may, as a matter of right, make to the court and jury such statement "as he may deem proper in his defense" (Penal Code, § 1036) ; but he can not as a matter of right prevent the jury from hearing from the other side of the case upon the subject-matter which he thereby injects into the case.

6. The prisoner, in his statement, claimed that the homicide was justifiable, that he acted solely in self-defense, under the fears of a reasonable man that his eyesight was about to be destroyed and that his life was in danger. The court fully and fairly instructed the jury as to the principles of law applicable to such a killing. By way of showing a basis for the reasonable fears and the consequent justification which he claimed, the prisoner further stated that he was surprised and unexpectedly assaulted by the decedent, who was a powerful young man, in the prime of health and life, while he, the accused, was an old man whose eyesight had become dim from age, whose left arm had been useless

since childhood, and who was at the time of the homicide and for a long time had been suffering from a double hernia of such a nature that any physical struggle on his part might likely result in his death from strangulation of the hernia. The statement of the prisoner as to the disparity in size and strength of the combatants was partly corroborated by the sworn testimony. The court nowhere instructed the jury that they might consider along with the other evidence in the case any inequality found by them to have existed in the relative size and strength of the combatants, in arriving at the real truth of the case. But the prisoner's counsel duly requested in writing, and the court refused to give, an instruction as follows: "In determining whether the defendant was justified in shooting the deceased in self-defense or under the influence of reasonable fears, you can take into consideration any inequality of the relative sizes of the defendant and the deceased, and difference between the physique and strength of the defendant and the deceased, and any rupture from which the defendant was suffering, if such things appear from the evidence." I cannot say that such a charge, if given, would or would not have affected the verdict returned. But under the facts of this case it was the prisoner's right to have the jury instructed in accordance with his request, or in other appropriate language; and having done all in his power to obtain that right, and having nevertheless failed to obtain it, a new trial, in my opinion, should be granted, so that the jury's application of the law to the facts as they believed them to be may not be left as a matter of conjecture; and for this reason alone I dissent from the affirmance of the judgment of the trial court.