FAIR *v.* THE STATE.

No. 7344.   July 30, 1930.   Rehearing denied October 4, 1930.

*Len. B. Guillebeau,* for plaintiff in error.

*George M. Napier, attorney-general, John A. Boykin, solicitor-general, T. R. Gress, assistant attorney-general, J. W. LeCraw,* and *E. A. Stephens,* contra.

Russell, C. J.   In addition to the facts set out in the first paragraph of the opinion when the former conviction of this defendant was before this court (*Fair* v. *State,* 168 *Ga.* 409, 148 S. E. 144), the following facts are stated from the present record:   The accused was again sentenced to death by electrocution.   A motion for new trial upon the general grounds was filed, which was amended by two special grounds which allege:

(1)   That it was error to refuse to charge the jury as follows, as requested in writing:   "Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act, or a lawful act which probably might produce such a consequence, in an unlawful manner; provided, that where such involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a riotous intent, or of a crime punishable by death or confinement in the penitentiary, the offense shall be deemed and adjudged to be murder.   The defendant contends that there was no intention whatever on his part to kill the deceased, and that he did not intentionally fire the shots that took the life of the deceased.   If you believe this contention of the defendant to be true, or if you have a reasonable doubt that he intentionally fired the fatal shots, you will further look to the evidence and determine whether or not the defendant was committing an unlawful act at the time the deceased received the wounds that caused his death.   In this connection, gentlemen of the jury, I

charge you that any person having or carrying about his person, unless in an open manner and fully exposed to view, any pistol is guilty of a misdemeanor; and I charge you further that it shall be unlawful for any person to have or carry about his person, in any county in the State of Georgia, any pistol or revolver without first taking out a license from the ordinary of the respective counties in which the party resides, before such person shall be at liberty to carry any pistol around with him on his person, or to have any pistol in his manual possession outside of his own home or place of business. If the defendant killed the deceased without any intention to do so, but while engaged in the unlawful act of carrying a concealed pistol or carrying a pistol without license, he would be guilty of the offense of involuntary manslaughter in the commission of an unlawful act. Involuntary manslaughter in the commission of an unlawful act shall be punished by confinement and labor in the penitentiary for not less than one nor longer than three years." The contention is that this request was pertinent upon the testimony of a witness for the State, who swore that she saw the policeman and defendant run together, that the first shot was fired after the officer caught defendant and two or three steps were taken, that there was a struggle, and that defendant had a pistol; as well as upon the defendant's statement, in which he told of having a pistol and shooting the man named Griffin, then running to the deceased for protection, of colliding with the deceased, and of accidental discharges from the gun; and to an affidavit made by deceased just after the shooting of the officer, introduced by the State, in which he told practically the same things, saying he held the gun in his hand as he ran after shooting Griffin, and it was discharged after contact with the officer. The defendant insists that had the requested charge been given the result might have been a verdict of involuntary manslaughter in the commission of an unlawful act.

(2) That it was error to charge the jury as follows: "In view of comments of defendant's counsel on failure of the State to offer in evidence any dying declaration of the deceased, I should charge you that no such statement of the deceased, if one was made by the deceased after he went to the hospital, if he did go there, could have been offered in evidence and admitted as a dying declaration as to the cause of his death and the person who killed him,

unless it were first shown by evidence in the case that such a dying declaration, if one was made, was made while the deceased was in the article of death and conscious that his end was near or conscious of his approaching dissolution. No such declaration having been offered and admitted in evidence in this case, you should try the case on the evidence and the defendant's statement as applied to the rules of law given you in charge. If there was evidence in this case that there was such a dying declaration made by the deceased while in the article of death and while the deceased was conscious of his condition, as to the cause of his death and the person who killed him, it would not be improper or illegal for counsel for the defendant to make such comments as he made on failure to produce such evidence. This would not mean that you should not consider statements made by the deceased as admitted in evidence shortly after the occurrence and as a part of the res gestæ and before the deceased went to the hospital; all these statements having been admitted in this case for your consideration and admitted without objection." The charge was based upon argument of counsel for the defense, to the effect that the State had failed to introduce a dying declaration of the deceased, because, from talking with him after the shooting, the State had learned that what he knew of the shooting would not serve the prosecution; that the deceased lay in a hospital three days, during two of which he was conscious, according to testimony; that naturally he knew he was going to die, and any statement taken from him would have been admissible as a dying declaration. The complaint is that the charge vitiated the force of the defense argument, and was prejudicial, particularly where the judge said that it would not be improper or illegal for counsel to make such an argument where there was proof of a dying statement having been made—the effect being to argue to the jury that, under the circumstances of this case, the argument was improper and illegal; that the charge expressed an opinion as to the guilt of the accused for the above reason, and also particularly was this done by that portion where the judge told the jury they should consider any statements made by deceased shortly after the occurrence as part of the res gestæ, the same being based upon the testimony of a witness for the State, who swore he was a policeman and that deceased had called to him after the shooting and told him to

"take charge of this man and this pistol; he shot me," since the charge would lead the jury to believe the court considered that it was proved that deceased made such a statement. It is further complained that the court told the jury that the alleged statements of deceased referred to at this point were admitted without objection, since this unduly emphasized the testimony to which the defendant could not object even if he knew it to be false, if it was relevant and otherwise legal.

The motion was overruled, and the defendant excepted.

■ The verdict is supported by evidence.

■ Only the two special grounds of the motion for new trial are argued. The reason is not far to find. While no insistence is made upon the general grounds in argument of counsel, Fair admitted that the shot from the pistol in his hands caused the death of McDaniel. The whole case turns upon the intention or lack of intention in the mind of the slayer at the time the shot was fired. For this reason the plaintiff in error calls special attention to the request to charge that was refused. Had the request been more concretely applied to the facts, it might have been error to refuse it; but the request itself was a presentation of the law in the abstract, and not so plain as to be free from error. Under the evidence the court was not compelled to give it in charge, and we can not hold that failure to give it was harmful to the defendant, especially since instructions actually given were more favorable to him than that requested. The court treated the occurrence, in each reference to it, from the viewpoint of the accused, as an accident, and instructed the jury that if they believed the shooting of the policeman, McDaniel, was an accident, they should acquit Fair, and unless they believed beyond a reasonable doubt that the shooting was not an accident, they should acquit, or if they had a reasonable doubt as to whether the shooting were intentional or accidental, they should acquit. In view of the charge actually delivered, we can not say that the court erred in refusing the request. On the subject of involuntary manslaughter, as indicated by the request, it does not appear, as it should before the court would be authorized to give the request, that the misdemeanor of having a pistol or of carrying one without a license was the proximate cause of the shooting. See *Alexander* v. *State,* 160 *Ga.* 769 (5) (129 S. E. 102). In every case of involuntary manslaughter, "the death

must be due to the unlawful act of defendant, and not to the intervening act or negligence of a third person; or to an independent intervening cause in which defendant did not participate and which he could not foresee, and the death must have been the natural and probable consequence of the unlawful act, and the act the proximate cause." 29 C. J. 1150. "There can be no conviction of the offense of involuntary manslaughter, either in the commission of an unlawful act, or in the commission of a lawful act without due caution and circumspection, where the homicide is directly due to an independent intervening cause in which the accused did not participate and which he could not foresee." *Carbo* v. *State,* 4 *Ga. App.* 583 (62 S. E. 140).

The requested charge was predicated in part upon the testimony of a witness for the State, that she saw the pistol before a shot was fired and that it was pressed against the deceased's leg, which negatives entirely the argument of counsel that the offense was involuntary. This witness testified she did not see the second shot, but that shot must have been the one which, according to the physician, perforated deceased's intestine five times and the bladder twice. The trial judge considered that the theory presented by the defendant's statement was one of homicide by mistake or accident, and he charged the jury: "On the subject of accident I charge you that the law provides: A person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident, and where it satisfactorily appears there was no evil design or intention or culpable neglect. . . If the killing in this case was the result of accident, the defendant should be acquitted. . . If the defendant committed the acts charged against him, and it was an accident, the defendant should be acquitted. Likewise he should be acquitted if the State has failed to carry the burden of proving by the evidence in the case the truth of the material allegations of the indictment beyond a reasonable doubt. Likewise the defendant should be acquitted in this case unless you should believe from the evidence beyond a reasonable doubt that the defendant did intentionally and with malice aforethought shoot and kill the deceased at the time and place and in the manner expressed in the indictment." If the defendant's statement presented a case of involuntary manslaughter instead of homicide by mistake or accident, the judge's charge was more favorable to the defendant than he was

entitled to. Consequently the plaintiff in error has no right to complain. The case falls within the doctrine announced in *Johnson* v. *State,* 130 *Ga.* 27 (60 S. E. 160) where it was held that "Under the decision in *Hill* v. *State,* 41 *Ga.* 484, the omission by the court to charge on the subject of involuntary manslaughter in the commission of an unlawful act, based on the theory of an accidental discharge of the pistol, furnishes no ground for reversal, where the court charged that the same facts on which instructions as to involuntary manslaughter might have been based would result in the acquittal of the accused. Such charge was more favorable to the defendant than that which he complains was not given." In this case the judge charged the jury, as expressed in the opinion of this court, "that if they believed that in a struggle over the pistol, without any intention to shoot the officer, the pistol was accidentally discharged and killed the officer, the defendant could not be found guilty." In the *Hill* case it was declared: "When the omission to give a charge by the court is supplied by the judge giving a more favorable charge than the law of the case authorized: *Held,* that this omission was not error." It was contended by counsel in the *Hill* case that the pointing of a pistol would be an unlawful act, and that if the accused stumbled while so doing and the pistol went off accidentally he would be guilty of involuntary manslaughter in the commission of an unlawful act. In the opinion the court said: "The facts in this case show that the deceased went to the house of the accused, being called there, and, as he was at the door, the accused pointed his pistol and shot him. There was no quarrel or provocation; the defense accounted for the shooting upon the ground that he was in fun, and stumbling over a box, the pistol went off and killed deceased." Fred Fair declares he was running at great speed, with a loaded pistol in his hand, and that the pistol went off after he collided with the deceased. He therefore argues (as was argued in the *Hill* case) that this would support a conviction of involuntary manslaughter in the commission of an unlawful act. The opinion in the *Hill* case says: "Upon this statement of facts, was it the duty of the court to charge the various grades of homicide? We think not. The case presented was one either of murder from implied malice, in the wantonness of the act and its reckless disregard of human life, or it was accident." And so in the case at bar, the trial judge

charged the jury fully with respect to the legal effect of an accidental killing, or one by misfortune.

■ Was the charge of the court set out above subject to the complaints made against it? The point has been made that the second special ground of the motion for new trial was not altogether approved by the judge. If this is true, it could not be considered. The judge's certificate recites: "I can not recall the words or language of defendant's counsel in reference to the failure of the State to offer in evidence any dying declaration of the deceased. The substance of this argument was that it was unreasonable to believe that no such dying declaration had been made, and criticized the solicitor-general for withholding such evidence from the jury. He argued that the officers or solicitor-general had kept from the jury evidence of a dying declaration which he argued must have been made in the case. I can not remember his exact language." Grounds of such a motion will not be considered where not unqualifiedly approved by the trial judge. *Mitchell* v. *State,* 152 *Ga.* 375 (3) (109 S. E. 357); *Coart* v. *State,* 156 *Ga.* 536, 538 (4*a*) (119 S. E. 723). In a general way, however, in this case, the judge says he does not remember the exact language used by defendant's counsel, which it is attempted to set out in general terms in the motion for new trial. We do not think that this would prevent this court from passing upon the exception as modified by the note of the presiding judge. And we are of the opinion that the court did not err in instructing the jury that there was no evidence of a dying declaration or that McDaniel had ever made a statement in articulo mortis, conscious of his condition at the time, in conformity with the law upon such evidence. We are further of the opinion that the court had a right to tell the jury that there was no testimony upon a given subject, if indeed none was adduced, without violating § 4863 of the Civil Code or § 1058 of the Penal Code. The judge's charge explained to the jury the legal definition of a dying statement, by saying that a statement made by a wounded person would not be admissible as a dying declaration unless the declarant was in articulo mortis and conscious of approaching death. Counsel for the defendant argued that the evidence warranted an inference that McDaniel had made a statement while in the article of death, which had not been introduced in evidence by the State. He did not assert there was evidence of such, but argued to the

jury that such a statement had been made. Since the jury's attention was thus directed to this subject, we think it was not improper for the judge to tell the jury what was a dying declaration. See, in this connection, *Bailey* v. *State,* 70 *Ga.* 617 (3) ; *Towner* v. *Thompson,* 82 *Ga.* 740 (3) (9 S. E. 672) ; *Lewis* v. *State,* 91 *Ga.* 168 (2) (16 S. E. 986).

But it is insisted that the court expressed an opinion by the words of the charge: "No such declaration having been offered and admitted in evidence in this case, you should try the case on the evidence and the defendant's statement as applied to the rules of law given you in charge." This was merely a statement by the judge that there was no evidence of a certain thing, to wit, a dying declaration. The court's statement, being the truth, was not error. In *East Tenn. &c. R. Co.* v. *Markens,* 88 *Ga.* 60 (13 S. E. 855, 14 L. R. A. 281), this court said: "Where there is no evidence that a passenger in a public hack knew of danger from an approaching train on a public crossing, the judge may so state to the jury, and may say that there is no evidence of any failure in duty on the part of such passenger to avoid the injury." The judge further said: "This would not mean that you should not consider statements made by the deceased as admitted in evidence shortly after the occurrence and as a part of the res gestæ, and before the deceased went to the hospital." This is alleged to be expression of opinion upon the evidence. We do not consider that the judge intimated that he believed any of the testimony. He simply stated in effect that the jury should consider testimony admitted in evidence as a part of the res gestæ. There is a wide difference between saying that a particular thing has been proved and saying that there has been testimony on that thing. As was said in *Saffold* v. *State,* 11 *Ga. App.* 329 (2) (75 S. E. 338), "It is permissible for the trial judge to state his recollection of what has been testified, when in doing this he does not intimate any opinion as to the weight which the jury should attach to the testimony, or that any statements which have been made are true." The judge in the case at bar of course instructed the jury that they were the exclusive judges of the evidence and credibility of the witnesses, and that they had the right to believe the statement of the defendant in preference to the sworn testimony in the case. In *Glover* v. *State,* 129 *Ga.* 717 (59 S. E. 816), the trial judge cer-

tainly expressed an opinion as to what the witness in question had testified, though this court held that he did not express an opinion as to what had been proved, saying: "The fact that the trial judge, during the progress of the trial, stated to counsel, in the presence of the jury, that a named witness, who had testified for the defense upon the question of the sanity of the accused at the time of the commission of the alleged crime, did not claim to be an expert in such a case, or to have any particular knowledge upon the subject, is not cause for a new trial, when it is not alleged that such statement of the judge was not correct." In *Green* v. *State,* 43 *Ga.* 368 (5), it was held that "presenting the truth of what a witness swore, to the jury, is distinguishable from expressing an opinion as to a fact proven, by the court." The judge had a right to direct the jury's attention to the fact that there was no evidence to prove the existence of a dying declaration by the deceased, and his charge contains no expression of opinion as to what was proved or as to the guilt of the accused.

*Judgment affirmed. All the Justices concur.*