## MORRIS *v.* THE STATE.

No. 9184.   MAY 18, 1933.

*Otey B. Mitchell, Jesse B. Simmons,* and *Lester C. Dickson,* for plaintiff in error.

*Lawrence S. Camp, attorney-general, John A. Boykin, solicitor-*

*general, T. R. Gress, assistant attorney-general, J. W. LeCraw, and E. A. Stephens, contra.*

BELL, J. Richard Morris was indicted jointly with Richard Sims and Tom White, alias Mose White, for the alleged murder of Frank C. Foster. Upon a separate trial Richard Morris was convicted without a recommendation, and the death sentence was imposed. The defendant's motion for a new trial was overruled, and he excepted.

The evidence for the State tended to show that the three defendants named with another man by the name of Harold White entered a store in the City of Atlanta for the purpose of committing a robbery, and that Foster, a police officer who was in the store at the time, sought to interfere and was shot and mortally wounded by Harold White, but that Harold White was then and there shot and killed by the officer before the officer died. The evidence authorized the inference that the defendant Morris participated in the robbery by exhibiting a pistol and by other acts, and that he was guilty of the homicide as alleged. In the motion for a new trial as amended it is contended that the presiding judge committed a number of errors during the trial, and the assignments of error will be considered in the order in which they are discussed in the brief of counsel for the plaintiff in error.

■ It is complained that the court erred in admitting in evidence a written statement signed by the defendant and two others who were jointly indicted with him. This statement was as follows: "About seven o'clock Wednesday night, March 16, 1932, we together with Harold White left the house in the rear of 34 Rawson Street, and went out Rawson Street to Capitol Avenue and out Capitol Avenue to Bass Street, out Bass Street to Washington Street to Washington Terrace, and there we got the Ford coupe that we were using on the night of March 16. The car was parked by the side entrance to 735 Washington Street. We went out Washington Terrace to Pulliam Street and Pulliam Street to Richardson Street, and out Richardson to Martin Street, and then we just rode around in Summerhill until about 10:30. Harold White was driving the car. When we left Summerhill, we came up Capitol Avenue to Piedmont Avenue and out Piedmont to Forrest Avenue and Forrest to Boulevard and out Boulevard Place and turned right off of Boulevard on to Boulevard Place and parked the car near the

back of the store where the shooting took place. Harold White went into the store and bought the potato chips and came back out and said there were three men in there, but that was all right. Mose White went in first and went just back of the heater near the back of the store. Harold White went in next and asked the man for a lady lock and when the man reached for it, Harold put the gun on him and told him to stick them up. Richard Sims walked in behind Harold and followed him behind the counter. Richard Morris got just inside the store and was near the place where you go behind the counter. Just as Richard Sims rang the register the man that Harold had the gun on ran down behind the counter to where another man was leaning on the counter talking to the man that was shot, and hollered 'Red, Red' [this being a name by which the deceased was called]. Then the shooting started and we three ran out of the store, and Richard Sims left his cap on the counter near the cash register and Richard Morris lost his near the door. About 12:30 we three met near the corner of Woodward Avenue and Frazier Streets and went to the house at the rear of 34 1/2 Rawson Street and divided the money which was five dollars and some change each. Mose White left the house then and Richard Sims and Richard Morris went to bed, and we did not see each other from then until we were all in the police station. The above named streets, locations and routes are the ones that we showed the officers this morning.

his

[Signed]   Thomas White   Richard Morris   Richard x Sims."

mark

A witness for the State testified that he wrote the statement on a typewriter in the presence of the defendant Morris and his companions and in accordance with information which they collectively gave to him at the time he was writing it, and that after the statement was read to them they all signed it in the presence of the witness and in the presence of each other. The admission of the statement in evidence was objected to upon the grounds "that same was a statement of other joint offenders made after the joint enterprise had ended, and was by them confessions not admissible in evidence against the defendant on trial; and . . that same did not constitute such an admission by acquiescence on the part of defendant to statements of others made in his presence as to be admissible in evidence against him."

The court did not err in overruling these objections and admitting the evidence. This was a joint statement made and signed by all three defendants in the presence of each other. The statement of each was the statement of all, and it was not inadmissible under the rule that a confession or statement by one joint offender or conspirator made after the enterprise is ended is admissible only against himself. So far as the writing contained statements by others than the defendant on trial, proof of such statements together with the defendant's assent constituted evidence of an admission by the defendant. Penal Code (1910), § 1029; *Smiley* v. *State,* 156 *Ga.* 60 (118 S. E. 713); *Gunter* v. *State,* 19 *Ga. App.* 772 (5) (92 S. E. 314).

█ The court charged the jury as follows: "A certain statement has been offered by the State, and is in evidence, signed by three parties, including the defendant on trial. I instruct you that statements or admissions of other alleged conspirators after the alleged enterprise has ended are not admissible against this defendant and could not be used as evidence against him, unless under section 1029 of the Code, which reads as follows: 'Acquiescence, or silence, when the circumstances require an answer or denial or other conduct, may amount to an admission.' You would not consider, therefore, the statements of the other two in the written paper which has been read to you, unless you find that they amounted to an acquiescence which in itself amounted to an admission by this defendant against himself."

It is contended that this charge was error because: "It submitted to the jury the question of acquiescence or silence when the circumstances required an answer or denial, when the statement introduced into the case was in fact and law a confession, and a signed written statement, and therefore section 1029 of the Code had no application to the case;" and "said instruction of the court was not adjusted to the evidence and it was given upon a theory which was unsupported by the evidence, to wit: the question of admissions, acquiescence or silence."

This charge was also excepted to upon the following additional grounds: It left to the jury the question of whether the written statement was a confession or an admission, when the same should have been decided by the court as a matter of law; the court failed to instruct the jury what constituted a confession and what con-

stituted an admission, and thus left the jury without a legal defini-
tion to guide them in their construction of the original statement;
the court failed to instruct the jury when and under what circum-
stances a person may be called upon to make a denial of a state-
ment made in his presence, and what would amount to an acqui-
escence in such statement; the court failed to instruct the jury that
they should disregard the "statements of the other two and con-
sider only the statement of the defendant;" the charge did not suffi-
ciently instruct the jury as to the segregation of the statements of
each, "so that the jury could differentiate the statement of the de-
fendant from the statement of the other two."

There is no merit in any of these contentions. The present case
is distinguished by its facts from the case of *Hammond* v. *State*,
156 *Ga.* 881 (120 S. E. 539). In that case the evidence showed
silence by the defendant, and the court instructed the jury that if
they believed that the defendant heard the statement by another and
if he made no denial of the charge, the jury might "consider that
as an admission." In dealing with the charge in that case, this
court held as follows: "In charging a jury the rule contained in
section 1029 of the Penal Code, relating to acquiescence or silence
as an admission, the court should not fail to instruct the jury, in
connection with that rule, that the jury are to determine whether or
not, under all the circumstances, an answer or denial was required."
According to the evidence in the present case, the defendant did not
remain silent, but actively participated in dictating the statement,
and the statement was then signed by the defendant and the other
two in the presence of each other. It was therefore not incumbent
upon the trial judge to instruct the jury that they should determine
whether or not an answer or denial was required. There was no
silence or acquiescence to be considered by the jury for the purpose
of determining whether or not it amounted to an admission, as in
the *Hammond* case. The charge was not otherwise erroneous as
contended.

■ The movant assigned error upon the refusal to give the fol-
lowing requested charge: "All admissions should be scanned with
care, and confessions of guilt should be received with great caution,
and a confession alone, uncorroborated by other evidence, will not
justify a conviction." It is alleged that this charge "was pertinent
and applicable to the facts, in that a written statement was involved

in the case, which movant contends shows on its face to be a confession by defendant, and that the charge was sound law; and that the request was not sufficiently met by the court's general charge, nor by the charge as given that 'all admissions should be scanned with care and received with great caution.'"

Under the particular facts of this case, the refusal of the request was not cause for a new trial. It appears from the evidence that the State introduced three statements made and signed by the defendant, including the joint statement referred to above. In the charge as given the court instructed the jury as follows: "The law says that all admissions, even if made, should be made freely and voluntarily, without the slightest hope of reward or the remotest fear of injury. If you find that any admissions were made, and that they were freely and voluntarily made, you would be authorized to consider them in connection with all other evidence in the case and the defendant's statement, in determining his guilt or innocence. I instruct you that all admissions should be scanned with care and received with great caution. I instruct you that an admission is a circumstance which requires the aid of other evidence to authorize a reasonable conclusion of guilt. In other words, admissions must be made freely and voluntarily and must be corroborated by other facts or circumstances that tend to connect the defendant with the crime as charged, and, as I have stated, must be scanned with care."

It is contended by counsel for the plaintiff in error that the "joint statement" amounted to a confession; and that because the charge as given related only to admissions, it did not cover the principle stated in the request. Regardless of whether this statement should be construed as a confession, or merely as an admission, the charge which the court actually gave was more favorable to the defendant than that embodied in the request. It applied to admissions the rules of law applicable to confessions, and must have been understood by the jury as applying to all statements made by the defendant, whether they amounted to a confession or not. An admission is always included in a confession, while the converse is not true. In view of the language of the charge as given and the facts developed by the evidence, the jury could not reasonably have understood that the instruction was not intended to apply equally to a confession, if the evidence showed that a confession had been

made. The defendant can not complain of a refusal to give a requested charge, where the charge as given upon the same subject was more favorable to the accused than that requested. *Fair* v. *State,* 171 *Ga.* 112 (2) (155 S. E. 329).

Furthermore, the assignment of error here under consideration was incomplete, because it merely referred to "a written statement . . which movant contends shows on its face to be a confession by the defendant," without otherwise indicating the particular statement to which this ground of the motion was intended to apply. "A motion for new trial must be complete in itself. Any evidence material to a consideration of a ground of such motion must be embodied therein. It is not sufficient that the evidence necessary to a due consideration of such ground appears elsewhere in the record." *Pepper* v. *Pepper,* 169 *Ga.* 832 (2) (152 S. E. 103); *Cason* v. *State,* 148 *Ga.* 477 (2) (97 S. E. 74); *Lewis* v. *State,* 149 *Ga.* 724 (101 S. E. 793).

■ In one of the grounds of the motion for a new trial it was alleged that "the court erred in admitting in evidence the testimony of a witness for the State (Mr. S. A. Smith) that defendant told him that he and those jointly indicted with him had held up and robbed another place just a short while before the occurrence of the offense for which defendant was then on trial." This evidence was objected to upon the grounds that "same was not admissible because irrelevant and immaterial, that it tended to implicate defendant in another crime which may have been committed prior to the offense for which he was on trial, that it was a separate and distinct matter and did not show motive, was highly prejudicial to defendant, and put his character in evidence."

It is clear from the record that the other robbery here referred to happened less than an hour before that in which the decedent was killed, and occurred in another store only a short distance away. The evidence as a whole tended to show that the persons who committed the prior robbery were the same as those who committed the robbery in the course of which the decedent was killed, and that this defendant was among the number. In *Wilson* v. *State,* 173 *Ga.* 275 (2), 284 (160 S. E. 319), this court, speaking through Mr. Justice Hines, said: "Evidence of the commission of one crime is not admissible upon the trial of the defendant for another crime, where the sole purpose is to show that the defendant is guilty of

such other crime. Where one is on trial charged with the commission of a crime, proof of a distinct and independent offense is never admissible, unless there is some logical connection between the two, from which it can be said that proof of the one tends to establish the other. To this general rule there are some exceptions; as, when the extraneous crime forms part of the res gestæ; or is one of a system of mutually dependent crimes; or is evidence of guilty knowledge; or may bear upon the question of the identity of the accused or articles connected with the offense; or is evidence of prior attempts by the accused to commit the same offense upon the victim as that for which he stands charged; or where the proof of the extraneous crime tends to prove malice, intent, motive, or the like, if such an element enters into the offense charged. . . In order that a collateral crime may be relevant as evidence, it must be connected with the crime under investigation as part of a general and composite transaction."

The evidence objected to tended to establish a conspiracy on the part of the defendant and his companions embracing the general intent and purpose of committing robberies, and under the decision in the *Wilson* case the evidence was admissible.

■ In another ground of the motion for a new trial it is contended that the court erred in admitting "the testimony of a witness for the State (Mr. S. F. Pickett) [delivered] in rebuttal, that defendant on the 14th day of March, 1932, came into witness's store that night and 'held us up,' and that defendant was accompanied by other participants, one of whom was Richard Sims." This evidence was admitted over the objection that the same "did not show motive." This was not a good objection. It was legally possible for the evidence to be admissible for some other purpose. Furthermore, it appears that the defendant and at least one of his codefendants participated in the robbery testified to by the witness Pickett. This robbery occurred only two days before that in which the decedent was killed. This evidence was admissible on the same ground as that referred to in the preceding division. It was also admissible for another reason. The defendant in his statement to the jury said: "I never took nothing from nobody in my life. . . About that robbery part, I tell you the honest truth, I did not know there was to be a robbery. None of them told me about that. If they had told me, I would not have been there. I have never done nothing like that in my life."

"Where the defendant in a criminal case exercises his right of making a statement not under oath, such statement may be contradicted by testimony as to the facts which it narrates." *Doyle* v. *State*, 77 *Ga.* 513 (2); *Shropshire* v. *State*, 81 *Ga.* 589 (8 S. E. 450); *Goolsby* v. *State*, 133 *Ga.* 427 (2) (66 S. E. 159); *Josey* v. *State*, 137 *Ga.* 769 (74 S. E. 282); *Barnes* v. *State*, 24 *Ga. App.* 372 (4) (100 S. E. 788).

■ Other grounds of the motion for a new trial are not specifically discussed in the brief of counsel for the plaintiff in error, but these were submitted on the general statement that the plaintiff in error insists on each and every ground of the motion for a new trial. All grounds of the motion have been carefully considered by this court, and it is our opinion that none of them discloses any just basis for a reversal of the judgment. The evidence authorized the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*