## 52165. JONES v. THE STATE.

MARSHALL, Judge.

Appellant was indicted and tried for murder and convicted of voluntary manslaughter in the shooting death of another man and was sentenced to twelve years in the penitentiary. His sole enumeration of error on appeal is that the trial judge erred in failing to charge, upon request, involuntary manslaughter under Ga. L. 1968, pp. 1249, 1276 (Code Ann. § 26-1103).

Witnesses for the state testified that on the day of the fatal shooting, the victim and several others were in a cafe in Coleman, Georgia. The appellant walked in and "snatched" a one dollar bill from the victim's hand. An argument over the dollar ensued, appellant complaining the victim owed him $10. Then both appellant and the victim left the cafe. One witness testified she heard appellant say as he was walking away from the cafe that he was going to shoot somebody. A short while later, both appellant and the victim returned to the cafe where appellant gave the dollar bill back to the victim. One witness, the victim's wife, heard appellant say to her and her husband, "I'll shoot my little Jack just like I'll shoot you," and "when I start shooting I'll shoot you and her, too." She stated the victim replied, "I know you wouldn't shoot me because I'm married to your niece. I know you wouldn't shoot me." The victim then put his arm around appellant in a friendly gesture, and began talking. Appellant then "started going for his gun" in his coat pocket, pulled it out and "they was tussling over one another" and then began "tussling over the gun. Then the gun went from my husband to Zebertee [appellant], back and then back and forth. Then the gun went up in the air and then it broke aloose. Q. It broke aloose? A. Yes, sir. Q. All right. And then what happened? A. And then my husband standing up there . . . they had broke aloose and then both of them were just standing up there. And then my uncle [appellant] shot up in the air and then he said, 'you don't believe I'll shoot you, do you? You black son-of-a-bitch, you don't believe I'll shoot you.' And then he shot my husband then." She also testified that after

shooting him and after the victim was placed in a car to be taken to the hospital, the appellant went over to him and said "I ought to shoot you again."

Another witness for the state who observed the shooting testified that appellant and the victim were "tussling" when both shots were fired. Yet another witness testified that they had quit tussling when the shots were fired, and were standing apart.

The appellant gave a statement to police after the shooting in which he stated, "He pushed the gun to the side and I fired it one time. He kept holding it and I brought it back and shot it again. This time it hit him. . . He was trying to take the gun away from me." At the trial, appellant testified under oath that after he took the dollar bill from the victim, he walked out of the cafe. He said that then the victim came after him and hit him from behind with a hard object and then grabbed him. Appellant stated that he reached for his pistol in his hip pocket and the two began to tussle over it. Appellant testified, "[The victim] said 'I'm going to take what you've got.' He didn't know what I got. I reached for the pistol. He snatched my hand out. That's what made it shoot. Q. When did you reach for the pistol? A. When he hit me. It scared me, he hurt my shoulder, too. And I tried to get aloose from him. I was going to hit him back, but I wasn't aiming to shoot and I didn't shoot. He jerked that pistol and made it go off. But I was going to hold the hammer. Q. He jerked the pistol and made it go off? A. That's right. Q. How many . . . how many . . . how many shots were fired? A. It shot two times. We tussled over it one time and it shot. Tussled over it some kind of way. I had on a leather jacket and it shot a hole through the left side of that leather jacket and he said, 'I'm going to take this pistol from an old man.' And them little boys said, 'take it, take it, take it.' They were cheering him up. Hollering, 'take it.' Q. And what . . . how did you happen to shoot the second shot? A. Well, he just . . . he tussling over it, throw the hand, and he snatched it like that. I had my hand on the trigger and the hand . . . that's what made it shoot off. I wasn't aiming to shoot, not and hit him. Q. You didn't intend to shoot him? A. No, sir. I was going to hit him like he hit me, but I couldn't get it out of his hand. It went off when he jerked it."

The trial judge instructed on misfortune or accident but refused a written request for instruction on involuntary manslaughter under Code Ann. § 26-1103 (a) and (b). Appellant contends that since the jury could have found him guilty of intentional pointing of a pistol, a misdemeanor under Ga. L. 1968, pp. 1249, 1325 (Code Ann. § 26-2908) or a simple assault, a misdemeanor under Ga. L. 1968, pp. 1249, 1280 (Code Ann. § 26-1301), the evidence would have supported a conviction of involuntary manslaughter in the commission of an unlawful act other than a felony. *Kerbo v. State,* 230 Ga. 241 (196 SE2d 424); *Howell v. State,* 123 Ga. App. 306 (1) (180 SE2d 599). *Held:*

Our view of the evidence is that the victim's death resulted from either (1) intentional shooting (murder) or shooting in a fit of passion (voluntary manslaughter) if the state's witnesses were believed, or (2) accidental discharge of the pistol during a struggle with the victim (accident) if the appellant's testimony were believed. There is no evidence in this case of the commission of an unlawful act other than a felony as was the case in *Kerbo,* supra, and *Howell,* supra. See also *Drake v. State,* 221 Ga. 347 (2) (144 SE2d 519). Accepting appellant's version of the facts, he did not intentionally point the pistol at the victim as was done in *Kerbo,* supra. Nor did he testify that he drew the pistol with the intent to scare his victim as was done in *Howell,* supra. Appellant's testimony was that he reached for his pistol as an instrument for striking his victim to ward off an attack, i.e., self-defense, a lawful act. A struggle ensued and the pistol accidentally discharged. A reasonable construction of this evidence raises only the defense of accident, and not the lesser homicide of involuntary manslaughter.

" 'The refusal of the court to charge the jury, as requested, on the subject of involuntary manslaughter in the commission of an unlawful act, based upon the theory of an unintentional discharge of the pistol, furnishes no ground for reversal, where the court charged that the same facts as those upon which the request was based would result in the acquittal of the accused, if the jury believed the death was due to an accident. The charge given was more favorable to the accused than that

requested, leaving him no just ground of complaint.' *Fair v. State,* 171 Ga. 112 (2) (155 SE 329)." *Watson v. State,* 132 Ga. App. 204, 205 (207 SE2d 685). See also *Hicks v. State,* 216 Ga. 574 (118 SE2d 364); *Cornog v. State,* 130 Ga. App. 46 (2) (202 SE2d 257); *Carmichael v. State,* 115 Ga. App. 591, 595 (155 SE2d 439).

*Judgment affirmed. Pannell, P. J., and McMurray, J., concur.*

ARGUED MAY 4, 1976 — DECIDED
MAY 28, 1976.

*Bowen & Ferguson, Charles M. Ferguson, A. Delbert Bowen,* for appellant.

*John R. Irwin, District Attorney,* for appellee.