# ALLEN, McINTOSH & COMPANY v. FARMERS & TRADERS NATIONAL BANK.

1. Interrogatories duly sued out, executed, and returned to and used as evidence in a city court, in a suit therein which is afterwards voluntarily dismissed, are admissible as evidence in a second suit between the same parties and upon the same cause of action afterwards brought in the superior court.

2. Letters are not admissible in evidence to establish a defense, when there is no proof that they are genuine.

3. Under the facts of this case, there was no error in permitting a witness to explain the code words used in a dispatch sent by the firm of which he was a member.

4. It is harmless error to permit a witness to testify to the contents of writings introduced in evidence, over objection that such testimony is secondary evidence, when it appears that the testimony of the witness corresponds with such writings.

5. Where a bill of lading issued in the usual form by a railroad company, consigning the shipment to the shipper's order, with directions to notify another, has on its back an endorsement "Deliver to A" signed by the consignee, such endorsement is a valid and sufficient assignment of the bill of lading to A.

6. It was error, under the facts of this case, to allow testimony as to the contents of a draft which was not shown to be lost or inaccessible for any reason.

7. Where, in a written contract between two parties, one buys from the other at a stipulated price goods to be shipped, and the carrier issues to the seller a bill of lading therefor, consigning the shipment to his order, which the latter transfers to a third person, such transfer alone does not entitle such third person to sue the buyer on the contract for the purchase-price.

Argued October 14,—Decided December 20, 1907.

Complaint. Before Judge Mitchell. Colquitt superior court. April 3, 1907.

*J. A. Wilkes,* for plaintiffs in error. *Shipp & Kline,* contra.

HOLDEN, J. The Farmers & Traders National Bank, of Covington, Ky., brought an action in Colquitt superior court against Allen, McIntosh & Co., to recover the purchase-price of a lot of corn shipped by Henry Heile & Sons from Cincinnati, Ohio, to the defendants at Moultrie, Ga., and by the latter rejected on account of alleged worthless condition. The petition set forth various letters and telegrams constituting the contract between Henry Heile & Sons and the defendants, the intendment of which was that the defendants purchased from the shippers two cars of sacked corn No. 2 mixed at 68 1/4 cents per bushel, cost and freight Moultrie, official board of trade certificates of grades and weights to be final, demand draft to be drawn in payment. It was alleged that the shippers had completed in good faith their part of the contract and had transferred to the plaintiff the bill of lading for the corn, with sight draft attached, thereby transferring to the plaintiff all of the rights of the shippers under the contract; and that the refusal of the buyers to accept the corn had resulted in the total loss of its value to the plaintiffs. Defendants denied any

indebtedness to plaintiff, alleging that the corn arrived in a worthless condition; that the transfer to the plaintiff was not in good faith, but that the plaintiff and the shippers were in collusion to defraud the defendants, and that the transfer of the draft and bill of lading to the plaintiff, if made, was pursuant to this collusion and for the purpose of making the plaintiff appear as an innocent purchaser. Interrogatories were introduced on behalf of the plaintiff to show compliance with the contract of shipment, including proper weighing and inspection of the corn, and the good faith of the alleged transfer to the plaintiff. On the back of the bill of lading, which was tendered in evidence, appeared the following endorsement: "Deliver to Farmers & Traders National Bank. Henry Heile & Sons." The draft given by the shippers to the plaintiff for the purchase-price of the corn was not offered in evidence. Upon the conclusion of the evidence, the court directed a verdict for the plaintiff for the full amount sued for, and entered judgment thereon, to which action of the court below the defendants excepted and assign error on the general grounds. Special grounds of error were also assigned on the admission and exclusion of certain testimony, which are referred to in the opinion.

1. The plaintiff brought suit in the city court of Moultrie against the defendant, which suit it dismissed. During the trial of that case, interrogatories which had been sued out in that case were read. The plaintiff brought the present suit in the superior court of Colquitt county, after the dismissal of the case in the city court. The suit in the superior court was between the same parties, involving the same subject-matter, and upon the trial thereof, over objection of counsel for defendants, the court permitted the plaintiff to use as evidence the interrogatories which were used in the trial of the case in the city court. Had this second suit been rebrought in the city court of Moultrie, the interrogatories could have been used under the authority of *Radford* v. *Ga. & Ala. Ry.*, 113 *Ga.* 627 (39 S. E. 108). Does the fact that the second suit was instituted in a different forum change the rule? The principle upon which the interrogatories were allowed in the *Radford* case, supra, was that the second suit was between the same parties and involved the same subject-matter, and we do not see how this principle can in any way be affected by the mere transfer of the case to a court different in name, but having concurrent

jurisdiction of the parties and the subject-matter involved. Were such change of forum to alter the rule, it would put it in the power of a plaintiff, by simply dismissing his case and bringing it in a different court having like jurisdiction thereof, to render inadmissible many sets of interrogatories which a defendant had incurred much trouble and expense in obtaining, and thus force the defendant to again incur the trouble and expense of suing out interrogatories and having them executed and returned.

2. The defendants in the court below introduced letters from Heile & Sons in reference to reselling the corn, and other matters in aid of their defense. The court allowed these letters to be read to the jury, but, upon further consideration, ruled them out. It does not appear upon what grounds they were ruled out. There was no proof of the signing of these letters by Heile & Sons, by their admission, or otherwise. It was not even shown that they were received by due course of mail, or that they were written upon letter-heads of Heile & Sons. The court did right in excluding them. The only thing appearing in the record in reference. to these letters, outside of the letters themselves, was that they were introduced in evidence. In order for letters to be admissible as evidence, it must be shown that they are genuine; and there being no proof that the letters tendered as evidence in this case were genuine, the court very properly excluded them. *Freeman* v. *Brewster,* 93 *Ga.* 648 (6), (21 S. E. 165).

3. A. L. Heile, a witness for the plaintiff, testified that he was a member of the firm of Henry Heile & Sons, and that they made a contract with the defendants for two cars of corn. He testified that this contract was made by telegrams and letters, in which, for the purpose of economy, code words were used, and explained the meaning of the cipher words thus used. Defendants objected to the witness explaining the meaning of the code words used, on the ground that it did not appear that the witness was an expert, or in any way competent to give such evidence. The witness testified that his firm were merchants and grain dealers, and that the code words used in connection with the correspondence forming the contract referred to were in general use throughout the United States, and were well understood by all hay and grain men, boards of trade and chambers of commerce. Under the evidence in this case, there was no error in allowing the testimony of this wit-

ness in reference to the meaning of the cipher words used in the dispatches constituting a portion of the contract between the defendants and his firm.   See Civil Code, §3675 (2).

4. Objection was made by the defendants in the court below to A. L. Heile testifying in reference to the bill of lading, and W. E. Cremens testifying to the weight and number of the car of corn weighed by him, on the ground that there was higher evidence of these facts.   It appears, however, that the bill of lading testified about by Heile was introduced in evidence, and the certificate of Cremens was introduced in evidence, showing the weights and number of the car of corn which he weighed.   Since the testimony of the witnesses corresponded with the writings introduced, we do not see that the defendants sustained any injury by the introduction of the oral testimony.

5. The bill of lading introduced in evidence by the plaintiff had on it the following endorsement: "Deliver to Farmer & Traders National Bank." [Signed] "Henry Heile & Sons." Objection was made to the introduction of the bill of lading, because this endorsement was without date, and was an improper transfer, not being such an assignment and transfer as would carry title to the plaintiff.   We do not see any merit in the objection that the transfer was without date, since the witness Heile testified to the date on which it was made.   Nor do we see any merit in the objection that it was not a proper assignment and transfer of the bill of lading.   The transfer of a note or draft for money payable to order is usually and properly made by the words "*pay* to the order of."   A bill of lading refers to property; and we think, where there is a bill of lading like the one herein referred to, an endorsement thereon, "*deliver* to" some named person, signed by the consignor who is also the consignee to his order, constitutes a valid transfer of such bill of lading.   The meaning of such transfer is that the carrier shall deliver to the person named the property of which the bill of lading is the representative.

6. Defendants objected to the testimony of A. L. Heile in reference to the draft which he stated was attached to the bill of lading and delivered to the plaintiff, on the grounds that the draft itself was the best evidence of its contents.   It does not appear that this draft was lost, or inaccessible.   We think this was a good objection, and that permitting the witness to testify to its contents

was harmful error, because, the draft itself not having been introduced in evidence, it can not be determined whether the testimony of Heile in regard to its contents was true or not. The amount of the draft and its other contents could not be testified about, in the absence of a proper foundation for such secondary evidence.

7. The witness A. L. Heile testified by interrogatories. A part of his testimony was that he had in his possession all of the telegrams and letters showing the contract between his firm and the defendants, all of which he attached to his answers and filed as exhibit No. 1. Copies of these telegrams and letters do not appear in the record. It is true that in the brief of evidence it appears that this witness testified in his interrogatories as to what were the contents of these letters and telegrams, but this appears as a brief of his testimony concerning them and not of the letters and telegrams themselves. Copies of the letters and telegrams claimed to constitute the contract do not appear in the record, nor does there appear to have been any brief made of them. Heile testified to what was the substance of one of the letters. The draft was not introduced in evidence, and, of course, does not appear in the record. We do not know what are the full recitals and contents of the draft. It nowhere appears in the record that the original contract between the shippers and the defendant, or any account or debt arising therefrom, was assigned or transferred to the plaintiff. The bill of lading which was introduced in evidence had on it the following: "Deliver to Farmers & Traders National Bank. Henry Heile & Sons." This bill of lading was issued to Heile & Sons, consigning the shipment to their order. A member of the firm of Heile & Sons testified that the bill of lading was delivered to the plaintiff with a draft attached, but the draft, as stated, was not introduced in evidence. It does not appear that the contract for the purchase of the corn between Henry Heile & Sons and the defendants, or any right flowing from it, was transferred to the plaintiff, and no draft was introduced in evidence, but only the bill of lading, with the endorsement of Henry Heile & Sons thereon to the plaintiff. We do not think that under the evidence appearing in the record the plaintiff had any right to bring suit in its own name against the defendant for the purchase-money of the corn. Does the transfer alone of such a bill of lading by the vendor give the transferee a right to sue for

the purchase-money of the property sold? We are unable to see that it carries any such right. The Civil Code, §3554, provides: "When a bill of lading is attached to a draft drawn on a third person, it will be treated as security for the draft, and neither the title to the goods, nor right to the bill of lading, will pass to the drawee until, as required therein, he accepts, or accepts and secures, or pays the draft as the case may be;" and §2956 provides that a bill of lading may be delivered in pledge; but there is no provision in our law that the transfer of a bill of lading by the vendor of goods sold and shipped will give the right to the transferee to sue for the purchase-price of the goods. A bill of lading in one sense is a negotiable instrument, but it is simply a symbol or representative of the goods for which it is issued. *Commercial Bank* v. *Armsby Co.*, 120 *Ga.* 74 (47 S. E. 589, 65 L. R. A. 443); *Railroad Co.* v. *Lowe*, 101 *Ga.* 320 (28 S. E. 867).

The judgment of the court below is

*Reversed. All the Justices concur.*