### 10583.　CUTTER & COMPANY *v.* CENTRAL BANK AND TRUST CORPORATION.

1. Collateral security in the hands of a creditor is not subject to garnishment by other creditors (Civil Code of 1910, § 5296); and under the facts of this case the garnishment did not reach the surplus of the proceeds of the security in the hands of the secured creditor, arising from a sale made after the garnishment had been answered.
2. The court did not err in admitting in evidence on the trial of the traverse to this garnishment the answers to interrogatories sued out for use on the trial of a traverse to a previous garnishment between the same parties and used on that trial.

DECIDED DECEMBER 10, 1919.

Garnishment; from Fulton superior court—Judge Ellis. March 19, 1919.

1. J. H. Cutter, in business as J. H. Cutter & Company, sued out garnishment on January 30, 1917, based on a pending suit in which the Brown-Cramer Cotton Company was defendant. Summons of garnishment was issued and served on the Central Bank & Trust Corporation on March 10, 1917. An answer denying indebtedness was filed by the garnishee on May 16, 1917. On July 3, 1917, the plaintiff filed a traverse to the answer. The case was tried on an agreed statement of facts and on evidence set out in the following opinion, and the court directed a verdict in favor of the garnishee; to which the plaintiff excepted.

2. In the agreed statement of facts it is stated that "this is a traverse of the answer of the Central Bank and Trust Corporation to the second summons of garnishment served upon it in

this case." As to the interrogatories of F. H. Bates the bill of exceptions states: "Said interrogatories were sued out on April 23, 1917, and were answered on May 3, 1917, before garnishee had filed its answer to which plaintiff filed this traverse. Said interrogatories were sued out to be used at the trial of a traverse to the answer of the Central Bank and Trust Corporation in a previous garnishment between the same parties, which traverse was tried on May 28, 1917, at which trial said interrogatories were used by said garnishee. It was not stated or shown that said F. H. Bates was dead, disqualified, or inaccessible, or that any reason existed why his interrogatories could not have been taken for the present trial. To the introduction of said interrogatories plaintiff objected on the ground that they were sued out and used in another case. . . The court overruled plaintiff's objection to the interrogatories and allowed them to be read as evidence by garnishee." To this ruling the plaintiff excepted.

*T. B. Higdon, H. N. Fuller, W. T. Shore,* for plaintiff in error. *Candler, Thomson & Hirsch,* contra.

LUKE, J. This case arises by reason of service of process of garnishment upon Central Bank and Trust Corporation by the plaintiff, and the statutory traverse to the garnishee's answer denying indebtedness. The trial upon the traverse was had upon the following agreed statement of facts and evidence: "This is a traverse of the answer of the Central Bank and Trust Corporation to the second summons of garnishment served upon it in this cause, the answer having been filed on May 16, 1917. At the time of the service of the summons the Central Bank held warehouse receipts belonging to the Brown-Cramer Cotton Company, for 2,002 bales of cotton then stored with the Atlanta Warehouse Company. These receipts were held as collateral security for indebtedness of the Brown-Cramer Cotton Company to the Central Bank, amounting to $155,429.76. At the time the Central Bank filed its answer in garnishment, on May 16, 1917, this cotton was worth 20 cents per pound, and the 2,002 bales weighed 946,170 pounds. On May 28, 1917, the 2,002 bales were sold for $188,523.02, bringing 21½ cents per pound, or 20¼ cents net. During the pendency of the first garnishment in this cause, which was served on the Central Bank on January 30, 1917,

and was answered March 5, 1917, said cotton was worth from 16 to 18 cents per pound." A. P. Coles, sworn for the garnishee, testified as follows: "On May 28, 1917, I was vice-president of the Central Bank and Trust Corporation, and on that date I sold 2,002 bales of cotton which the bank held as collateral security for the indebtedness of the Brown-Cramer Cotton Company. $155,000.00 of the funds was applied to the indebtedness of the Brown-Cramer Cotton Company and the balance remitted to the Albany National Bank. Not a cent was turned over to the Brown-Cramer Cotton Company. The figures show what the cotton brought per pound, around $20\frac{1}{4}$ cents I think. I don't remember whether the cotton market was going up or down. I was familiar with it at that time. It was very hard to sell that grade of cotton at that time for 20 cents per pound. It had not been selling for that price; it had been selling very much lower. That was a very fine price we got for that cotton. I don't remember how much lower it had been selling, but there was practically no sale for poor cotton. I could not tell you what this cotton would have sold for on May 16. I remember we got a very fine price, because the cotton was very poor in grade. I made the sale as soon as I had a good price on it. I had to do it. We were all watching the market every day. The cotton had been practically unsalable on account of the grade. I mean by "unsalable" anything like the market value. I do not know what the market was except by the sale; generally a thing is worth what it will bring. I think this cotton sold above the market value. It brought $21\frac{1}{2}$ and $20\frac{1}{4}$ cents net,—$21\frac{1}{2}$ cents for middling cotton. I knew what the price of cotton was up to that time. I don't know what it was 12 days before that. The balance of $33,093.00 I sent to the Albany National Bank."

The garnishee introduced interrogatories of F. H. Bates, who testified as follows: "I am cashier of the Albany National Bank and was so on December 29, 1916. The Brown-Cramer Cotton Company was indebted to this bank on December 29, 1916, in the amount of $249,499.37. This indebtedness originated on account of money advanced by the bank to said Brown-Cramer Cotton Company, which money was used for the purpose of paying for the cotton. As security for this indebtedness the Bank held compress receipts of 1995 bales, stored in Albany, Cordele,

and other places. $214,763.08 of said indebtedness was paid on December 29, 1916, by the Brown-Cramer Cotton Company. The collateral, being the cotton receipts above mentioned, was surrendered to the compress companies, in lieu of which the railroads issued bills of lading to Brown-Cramer Cotton Company, who in turn indorsed them and attached them to drafts drawn by themselves on the Central Bank and Trust Corporation. A balance of $34,736.28 remained unpaid, and to secure this indebtedness Brown-Cramer Cotton Company transferred their equity in the above 1995 bales of cotton, on December 29, 1916. The transfer is as follows: 'Albany, Ga., Dec. 29, 1916, As collateral for our account for balance due the Albany National Bank on nineteen hundred ninety-five (1995) bales of cotton shipped Atlanta Warehouse Company, on which we have drawn sixteen (16) cents per pound, we hereby transfer our equity in same to said Albany National Bank, they having advanced the money to pay for said cotton. Brown-Cramer Cotton Company, by P. J. Brown, President.' There is still due from the Brown-Cramer Cotton Company to the Albany National Bank the sum of $34,736.28 of the indebtedness existing on December 29, 1916. I have no official connection with the Brown-Cramer Cotton Company. Its indebtedness to the Albany National Bank arose during the cotton season of 1916. It is not evidenced by note except a $10,000.00 note, a copy of which is attached to these interrogatories, marked 'Exhibit B.' The security which the Albany National Bank holds for this indebtedness, which is a transfer of the equity of 1995 bales of cotton, the original of which is attached to these interrogatories, has not been recorded in Dougherty County or Fulton County, Georgia. This security was taken on December 29, 1916, to secure the balance due the bank. At the time the security was given, the cotton was in process of shipment to the Atlanta Warehouse Company. The transfer which the Albany National Bank holds as security for the indebtedness of the Brown-Cramer Cotton Company is the transfer of the equity of the Brown-Cramer Cotton Company in 1995 bales of cotton. This instrument has not been recorded. The Albany National Bank through its cashier has not put the Central Bank and Trust Corporation of Atlanta on notice of the transfer to said former bank of the defendant's equity in said

cotton. S. B. Brown is President of the Albany National Bank. He has no official connection with the Brown-Cramer Cotton Company. The Albany National Bank holds no deposits, money, or property of the Brown-Cramer Cotton Company which can be applied to the indebtedness of said company to the bank other than the transfer of the equity in the cotton above mentioned. S. B. Brown is liable to the Albany National Bank on the notes it holds against the Brown-Cramer Cotton Company. The Albany National Bank has not released their lien or claim on the cotton of the Brown-Cramer Cotton Company."

The court directed a finding in favor of the garnishee, and the plaintiff excepted.

1. The record shows that the Albany National Bank had advanced on the cotton a large sum of money, and was holding the receipts therefor; that an arrangement was made whereby the cotton so held should be transferred to a warehouse in Atlanta Georgia, and, upon the receipt so held, the garnishee, Central Bank and Trust Corporation, advanced on the cotton a certain sum which was less than the amount that had been advanced by the Albany National Bank, the amount so advanced being paid to Albany National Bank. There was left a balance due the Albany National Bank, and for this balance the equity of the owner of the receipts was sold and transferred to the Albany National Bank. When the cotton was sold by the garnishee there was realized a sum in excess of what the garnishee had in the cotton, this sum was paid to the Albany National Bank, and it was insufficient to pay the advance as originally made by that bank. We do not think the garnishment reached this money. "Collateral securities in the hands of a creditor shall not be the subject of garnishment at the instance of other creditors." Civil Code (1910), § 5296. It appears that the liquidated surplus in the hands of the garnishee was not known or ascertainable until after the garnishee had answered, and for this reason, if for no other, such sum could not be reached by the garnishment in this case. See *Kyle* v. *Montgomery,* 73 *Ga.* 337; *Hall* v. *Paige,* 4 *Ga.* 428 (48 Am. Dec. 235). There are instances in which equity, upon proper pleadings, might distribute or hold the fund to answer the garnishment. See *Smith* v. *Worley,* 10 *Ga. App.* 280 (73 S. E. 428); *Southern Flour & Grain Co.* v. *Northern Pacific*

*Ry. Co.,* 127 *Ga.* 630-31 (56 S. E. 742, 9 L. R. A. (N. S.) 853, 119 Am. St. R. 356, 9 Ann. Cas. 347). In addition to what we have just said, it was proper, because of the lien of the Albany National Bank, that the surplus held by the garnishee be paid to the bank. See *Southern Flour & Grain Co.* case, supra; *Walton* v. *Horkan,* 112 *Ga.* 814, 816, 817 (38 S. E. 105, 81 Am. St. R. 77).

2. The objection raised as to the admissibility of the interrogatories is without merit. See *Radford* v. *Ga. & Ala. Ry.,* 113 *Ga.* 627 (39 S. E. 108); *Allen* v. *Farmers & Traders Bank,* 129 *Ga.* 748 (59 S. E. 103).

From the record in this case it was not error to direct a verdict against the traverse and in favor of the garnishee.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*