*Jones, Jones, Johnston & Russell, Charles M. Cork,* for defendant.

20979. TURNER *v.* THE STATE.

800

DECIDED SEPTEMBER 4, 1931.   REHEARING DENIED SEPTEMBER 9, 1931.

*Paul S. Etheridge & Son,. Morgan S. Belser,* for plaintiff in error.
*John A. Boykin, solicitor-general, J. W. LeCraw, William Schley Howard,* contra.

LUKE, J.   J. E. Turner and Bruce J. Baxter were charged with bribery in an indictment containing two counts, the first of which alone was submitted to the jury.   J. E. Turner was tried separately and found guilty.   The first question for decision here is raised by exceptions pendente lite to the court's judgment overruling Turner's demurrer to the indictment.   The other questions presented are raised by the motion for a new trial.

■ Count 1 charges J. E. Turner and Bruce J. Baxter with "the offense of bribery, a misdemeanor, for that said accused, on the 4th day of September, 1928, . . did unlawfully receive of and from the Federal Motor Truck Sales Corporation a Chevrolet sedan automobile . . of the value $650, as a reward given to accused by said corporation for procuring from the City of Atlanta, a municipal corporation, an order for the repairing and overhauling

of ten Federal motor-trucks belonging to the City of Atlanta, said order including the installing of ten new Federal motors in said trucks and repairing chassis, cabs, and bodies of said ten trucks, and said order being placed with said Federal Motor Truck Sales Corporation by the City of Atlanta, acting through its purchasing agent, with the signed sanction of the purchasing committee of the General Council of the City of Atlanta, upon the request of the municipal garage and shop department of the City of Atlanta; said delivery to and acceptance of said automobile by accused being in pursuance of an agreement whereby the said Federal Motor Truck Sales Corporation did agree to give to accused an automobile as above stated for the procuring of the order from the City of Atlanta above set forth. And the purpose of said offer and agreement to give said automobile as a reward was in part the influencing of the official behavior of the said J. E. Turner in the matter of procuring from the said purchasing committee of General Council the sanction of said order above referred to, and the voting of said committee and its members upon the same, the said J. E. Turner being then and there a member of the said purchasing committee, and it being a part of the duty of said purchasing committee to pass upon and sanction the placing of any orders of the character of the order above described, as provided by lawful ordinance of the City of Atlanta, the said J. E. Turner being also a member of the municipal garage committee of the said General Council and chairman of the same, the said J. E. Turner being then and there a legally qualified councilman of the City of Atlanta and a member of the General Council. And the said Bruce J. Baxter, being superintendent of the municipal garage of the City of Atlanta, did aid and abet the said Turner in committing all of aforesaid acts, and did thereby become a principal in said offense; all said acts of accused being contrary to the laws of said State. . ."

The demurrer to the indictment was on the grounds:

(1) It fails to allege that the said reward was received or accepted by accused for the purpose of influencing the official behavior of these defendants, or either of them. (2) It fails to set out in what respect the official behavior of the accused was to be influenced by the payment of the money or property alleged to have been given accused, and what official act was to be performed or

not to be performed by the accused as a result of such payment. (3) It does not set forth sufficiently in detail and with certainty the facts constituting the alleged offense, or the manner in which the accused are alleged to have been influenced in their official behavior, so as to put them and this court on notice as to what charge or charges are to be met. (4) It charges the defendant Turner as being a member of the General Council of the City of Atlanta, a municipal corporation, and having received a bribe as such, and fails to allege that he is a member of the General Assembly or officer of this State, subject to the offense of bribery. (5) It fails to allege that the matter depending before the General Council was a matter over which the General Council had jurisdiction, or that such matter was lawfully depending before that body.

We have set out the indictment fully in order to avoid repetition. A careful reading of it satisfies us that there is no merit in paragraphs 1, 2, 3, and 5. In regard to paragraph 5 of the demurrer, we quote the following pertinent language from *York* v. *State, 42 Ga. App.* 453, 462 (156 S. E. 733) : "The gravamen of the offense is the defendant's receiving a bribe to influence his official conduct. In 9 C. J., the general rule is stated that an official act need not be lawful to render the official liable, but need only be official in form, and done under color of his office. Thus *it is not necessary, in order to constitute bribery, that the vote of the public official bribed shall be on a measure which can be enforced?"* (Italics ours.) In the *York* case the court reached this conclusion (p. 465) : "Clearly our bribery statute is applicable to members of a municipal council." We see no merit in ground 4 of the demurrer. Our conclusion is that the trial judge did not err in overruling the demurrer.

■ It appears from the record that during the summer of 1928 the Federal Motor Truck Sales Corporation (hereinafter, for the sake of brevity, called "Federal Corporation") overhauled and repaired ten motor-trucks belonging to the City of Atlanta for $5,043.03, the $43.03 being added to the contract price of $5,000 for extras. According to the estimate of A. F. Smith, shop foreman of said Federal Corporation, the cost of labor and materials necessary in repairing said trucks, together with a fair profit to said corporation, amounted to something between $4,300 and $4,-

400. Nat Thornton, manager of the Atlanta branch of Federal Corporation, testifying in regard to a conversation with Bruce J. Baxter, superintendent of the municipal garage and shop department of the City of Atlanta, said: "In regard to the work of repair, Mr. Baxter came to me and said he would like to have an estimate on the repairs to the trucks, and, the best I remember, Mr. Smith, my foreman, said it would be around $4,400; and he said to raise the estimate enough to take care of the car, . . the sedan which Mr. Turner got." Thornton swore also: "You ask me what Mr. Baxter said prior to that time . . concerning this automobile. . . He said he wanted to trade this car for another car, the Ford. He came in and looked at a Chevrolet sedan, and said he would like to get the car for Dr. Turner where it would not cost him anything. Later on they came in together and saw the car. . . They came in together and selected the car that was finally delivered to Dr. Turner." The bid for repairing said motor-trucks was raised to $5,000 "to cover this automobile." We quote further from Thornton's testimony: "We made a profit, a reasonable profit, on the repair of those trucks, . . $600 or $700, I imagine. As I stated, at the instance or suggestion of Mr. Baxter we increased the amount so as to cover this automobile. This was not deducted from our profit. I had informed Mr. Baxter what our estimate would be before he suggested putting on anything to cover the car. Mr. Baxter and Dr. Turner came to our place together during the time this repair work was going on,—to the best I recollect, two or three times. When Dr. Turner and Mr. Baxter came there together they were just looking at the car, picking it out and deciding whether to take it or not; and during these visits they selected the car Dr. Turner wanted." The nature of the automobile transaction may be better understood from the following testimony of Mr. Thornton: "As I said, we sold that car to Dr. Turner for $650, of which we received $100 for his old Ford car which we took in exchange, and received from him a check for $550."

J. E. Turner was a councilman of the City of Atlanta, a member of the purchasing committee, and chairman of the municipal garage committee. Section 2349 of the City Code of 1924, which was in evidence, provides: "No contracts or obligations binding the City of Atlanta for the purchase of materials or supplies in excess of

current or present requirements, or in excess of $500, shall be made without the signed sanction of the committee of purchases, and all purchases amounting to $5,000 or more shall in all cases be under the general supervision of said committee." The purchasing committee for the year 1928 consisted of councilmen Ozburn, Turner, Drennan, Reynolds, and Vaughn.

Following the submission of the said $5,000 bid a formal "requisition," dated August 23, 1928, was made by the garage and shop department on the city purchasing agent, asking that said trucks be repaired by the Federal Corporation at a cost of $5,000. The requisition was signed "B. J. Baxter, Head of the Department, per Conner," and marked "O. K., J. T. Ozburn, Chairman, Frank H. Reynolds, J. E. Turner." Based upon this requisition the purchasing agent ordered the Federal Corporation to proceed with the job, and notified the comptroller of the City of Atlanta of that fact. Three days after the order for repairing said trucks, was issued, Thornton gave instructions to "deliver that car to Dr. Turner;" and Thornton believed "he actually got the car about August 31." It appears from the certificate of the secretary of State that Turner purchased said car on July 4, 1928. About August 4, 1928, Turner delivered to Federal Corporation a check signed by E. E. Parker, payable to nobody, and filled out for no amount. Parker was an acquaintance of Turner and procured through Baxter a job of doing some work on said trucks for Federal Corporation. Shortly after Federal Corporation procured said order for repairing the trucks Mr. Pegram, bookkeeper for Federal Corporation, filled in said check. In regard to it he swore: "This check in blank, signed by Estes Parker, was kept in our safe. As to at whose instance I put the date in this check and wrote the name J. E. Turner, to the best of my recollection Mr. Thornton brought it in there and had me fill it out. The date, August 4, was the date I filled it in, to the best of my recollection. I don't know of any reason for putting in that date. . . The entry of that Chevrolet sedan and the payment was entered in our books September 1. . . We didn't receive any payment at that time. . . When I made the entry the only payment we actually got for that car was this check, but it hadn't gone through the bank at that time."

The Parker check was not deposited until September 4, and on

that day a check for $550 was drawn on Federal Corporation in favor of Thornton and cashed by him. The proceeds of this check Thornton delivered to Baxter to make the Parker check good. Parker testified: "If I had not deposited the $500 Dr. Turner gave me I would not have had enough to take care of the check, as I only had $287.79. When he told me they were going to use the check and he was going to pay me and take up his note the next day, I didn't go to the bank and borrow any money, as he said he was going to come by and pay me. . . The $50 I spent myself. I used it for my own personal matters. He brought me the cash, $550. Then I deposited $500, and kept the balance to use myself." Thornton testified: "Now on the day we cashed that check, you ask me what we did to make that check of $550 of Estes Parker good. We drew $550 out of our account. That is dated the same date, September 4, that we deposited the other check. We drew that $550 out of our account and gave it to Bruce J. Baxter. You ask me what Mr. Baxter said to me before we presented Parker's check for $550 on Sept. 4th. He said he wanted to get the money to make it good. I went myself to the bank to get the money. . . When I got the $550 on this check I gave it to Mr. Baxter. He was in the car. Before that time I don't think we attempted to cash the check . . payable to me signed by Estes B. Parker. . . On September 4, 1928, I drew from my company $550 in a check and got the check cashed, and the company charged my account on that date with that amount. I never did pay that back in money, but it was credited to my account on November 30th. It came out of the city job; it was charged to that job of the city—the sale of the job." There was testimony that the defendant's character was good, and counter testimony that it was bad.

Were it not for the interminable length of the record in this case, it might be desirable to set out more of the evidence, especially that relied upon by the defendant; but this is impracticable. Suffice it to say that the defendant contended that the transaction in regard to the Chevrolet automobile was a perfectly legitimate purchase, that he paid for the car in full, and that he was entirely innocent of the offense charged against him. Under the evidence and the defendant's statement, the jury could readily have acquitted him; but since they declined to accept his version

of the affair, and saw fit to conclude that the evidence, with all reasonable deductions therefrom, proved his guilt, we decline to reverse the judgment refusing a new trial upon the general grounds.

■ We shall next consider a very material question presented by special grounds 5, 6; 7, 8, 9, 10, 11, 26, and 33. In each of these grounds it is complained that the court erred in admitting testimony as to certain acts and declarations of Bruce J. Baxter, for the reason that they were not done or made in the presence of the defendant, and there was no proof of any conspiracy. Each of the foregoing grounds deals with testimony of Nat Thornton. We think the gist of that testimony fairly appears from the following condensed statement: (*a*) Baxter told Thornton to raise the estimate on the repairs so as to take care of the automobile which the defendant got from the Federal Corporation. (*b*) Baxter told Thornton he would like to get the Chevrolet sedan for the defendant so that it would cost him nothing. (*c*) Baxter said that Thornton would have to get the money to make Parker's check good. (*d*) Baxter received the $550 in cash from Thornton to make the Parker check good.

We quote from Cook v. State, 22 Ga. App. 770 (9 a, b) (97 S. E. 264) : "A conspiracy can be shown by circumstances, as well as by direct evidence." "If sufficient prima facie evidence of a conspiracy is introduced to authorize the admitting of evidence of acts and declarations of one of the alleged conspirators, ultimately it is for the jury to determine whether, from the whole evidence, a conspiracy has been shown." In Coleman v. State, 141 Ga. 731, 733 (82 S. E. 228), Justice Lumpkin, speaking for the court, said: "While it may generally be better practice to require a prima facie case of conspiracy first to be made, before admitting evidence of the acts and declarations of one of the alleged conspirators, there is no inflexible rule to that effect. The trial court has some discretion as to the order in which testimony may be introduced; and if a prima facie case of conspiracy is shown from the whole evidence, the admitting of such testimony is not error. Unless, however, a conspiracy is shown prima facie, such evidence can only operate against the person whose acts and declarations are proved, if he is on trial; or if he is not on trial, they are not admissible against the defendants being tried, and should be rejected." The first headnote of Tompkins v. State, 17 Ga. 356, reads: "If

two or more embark in a common enterprise, the acts and declarations of each of the confederates, made or done in pursuance of the preconcerted agreement or understanding, are evidence against the other; and whenever enough of evidence is given in, as will conduce to prove a *prima facie* case of concurrent or joint action, the whole transaction should be submitted to the jury." The following is the fifth headnote of *Carter* v. *State,* 106 *Ga.* 372 (32 S. E. 345, 71 Am. St. R. 262): "According to the rule laid down by this court in *Byrd* v. *State,* 68 *Ga.* 661, the acts and declarations of one accomplice, done and made during the pendency of a common purpose and effort to conceal a crime already perpetrated, are admissible against another accomplice." We next quote from *Handley* v. *State,* 115 *Ga.* 584 (41 S. E. 992): "The rule that when individuals associate themselves in an unlawful enterprise, any act done in pursuance of the conspiracy by one of the conspirators is in legal contemplation the act of all, is subject to the qualification that each is responsible for the acts of the others only so far as such acts are naturally or necessarily done pursuant to or in furtherance of the conspiracy."

A careful reading of the record in this case satisfies us that a prima facie case of conspiracy was made out between the parties in this case; and, further, that each act or declaration involved comes within the rule laid down in the *Handley* case, supra. We hold that the grounds under consideration are not meritorious.

■ Special ground 1 complains of a charge the material portion of which is in this language: "If you believe a conspiracy has been proven to have existed between defendant J. E. Turner and Bruce J. Baxter to do the acts alleged in the indictment, and believe this beyond a reasonable doubt, then you would consider the evidence as to the acts and declarations of Bruce J. Baxter which have been admitted in evidence, along with the other evidence in the case, in determining whether or not, in your opinion, the defendant J. E. Turner is guilty as alleged in the indictment." It is contended that this charge authorized the jury to consider the acts and declarations of Baxter as evidence against the defendant, though they were not done or made during the pendency of the conspiracy, and though they were not done or made naturally or necessarily pursuant to or in furtherance of the conspiracy. The rule applicable to the question here raised appears in the quotation

from *Handley* v. *State,* supra. In *Almand* v. *Thomas,* 148 *Ga.* 369 (96 S. E. 962), it was said: "The court erred in charging the jury in the present case, in substance, that if a conspiracy or scheme to defraud is shown, any admissions made by parties to the fraudulent scheme might be considered by the jury, without qualifying such instruction by adding that only the admissions made pending the conspiracy or fraudulent scheme should be considered, and not those made after the conspiracy was terminated or the fraudulent scheme executed." See also Penal Code (1910), § 1025. Obviously the excerpt complained of is not a full and correct statement of the law. However, in connection with it the court correctly defined a conspiracy, instructed the jury that they were the sole judges as to whether or not a conspiracy had been proved, and further charged as follows: "The rule is that when individuals associate themselves in any unlawful enterprise, any act done in pursuance of the conspiracy by one of the conspirators is, in legal contemplation, the act of all, and is subject to the qualification that each is responsible for the acts of the others only so far as such acts are naturally or necessarily done pursuant to or in furtherance of the conspiracy." It will be observed that this charge is in the language of *Handley* v. *State,* supra. In the charge complained of the court had reference to "acts and declarations of Bruce J. Baxter which have been admitted in evidence." We know of no such act or declaration that was not pursuant to the alleged conspiracy or not in furtherance thereof. Therefore, the premises considered, we hold that the charge complained of was not harmful to the defendant, and was not cause for a new trial.

■ Special grounds 2 and 3 raise the contention that the bribery laws of Georgia do not apply to a municipal councilman. In the recent case of *York* v. *State,* supra, this court held: "Clearly our bribery statute is applicable to members of a municipal council." See our discussion of the fourth ground of the demurrer to the indictment in the case at bar. There is no merit in either of these grounds.

■ Special ground 4 avers that the court erred in admitting in evidence the following testimony of the witness Nat Thornton: "You ask me to refer to our bank account and tell you when this check was deposited, but we got the check and got the proceeds as indicated by the bank's stamp here on the check, September 4th;

that is all 1 could tell you." The objection was that "the check itself would constitute the highest and best evidence as to the date of its deposit." We are inclined to think that a witness would have the right to testify that he deposited a check on a certain date. However, it appears from the brief of evidence that the check itself was introduced in evidence. "It is harmless error to permit a witness to testify to the contents of writings introduced in evidence, over objection that such testimony is secondary evidence, when it appears that the testimony of the witness corresponds with such writings." *Allen* v. *Farmers & Traders National Bank*, 129 *Ga.* 748 (4) (59 S. E. 813). See also *Roberts* v. *Moore,* 136 *Ga.* 790 (2) (72 S. E. 239). This ground discloses no reversible error.

■ Special ground 12 avers that the trial judge erred in allowing the witness Nat Thornton to testify that he did not go before the purchasing committee or the garage committee in regard to the trucks repaired by Federal Corporation, and that he only submitted a bid, and that there was no competitive bidding. The objections interposed were: (a) that it was not shown that there was any legal duty resting upon Thornton to go before said committees, or (b) that competitive bids were required; it being contended also that the evidence related to acts of the witness not done in the presence of the accused, and that no prima facie case of conspiracy was shown to have existed between the accused and the witness Thornton. The point stressed in the brief of counsel for the plaintiff in error is that under the evidence there was no necessity for competitive bidding, and that "the evidence as to lack of competition and bids could only serve to prejudice the minds of the jury and to impress them with the fact that the city had been imposed on in the transaction." In our opinion there was prima facie proof of a conspiracy between Baxter, Thornton, and Turner. It appears that the ordinary course would have been to have competitive bidding on the contract, but that this was not done in this case for the reason that the Federal Corporation had sold the city the trucks and could best repair them. We think that the testimony was not objectionable for any reason assigned. In connection with this ground we quote as follows from *Slaughter* v. *State,* 113 *Ga.* 284 (2) (38 S. E. 854, 84 Am. St. R. 242): "Where several persons conspire to do an unlawful act, the acts and declarations of one of them pending the enterprise are admissible in evidence

against the others, although the former may not be on trial or indicted." See also *Byrd* v. *State*, 68 *Ga.* 661.

We here quote from brief of counsel for the plaintiff in error: "Grounds 13, 14, 15, 17, 20, 21, 23, 24, 25, 26, 28, 29, and 30 . . involve practically the same question of law, and for that reason will be argued together. These grounds complain of the admission of testimony which related to certain transactions between persons other than the defendant and not in the presence of the defendant and also the admission of certain documentary evidence taken from the files of parties other than the defendant and not in any wise connected with any transaction with which he was directly related. Such testimony should not have been admitted, under the general rule which declares that statements not made in the presence of the defendant can not be used as evidence against him in a criminal case. *Bishop* v. *State*, 125 *Ga.* 29 [53 S. E. 807]; *Phillips* v. *Trowbridge Furniture Co.*, 86 *Ga.* 699 [13 S. E. 19.]"

Ground 13.complains of the admission in evidence of the following voucher: "Federal Motor Truck Sales Corporation, Nat Thornton, City, Voucher 3, September 4, 1928, advanced on account $550. Approved for payment. E. N. P." Having held that a prima facie case of conspiracy was made out between Thornton, Baxter and the defendant, we now hold that the foregoing voucher was admissible in evidence.

Ground 14 complains of the admission in evidence of "check identified as follows: Federal Motor Truck Sales Corporation, Sept. 4, 1928, to order of Nat Thornton, Manager—drawn on Fourth National Bank, indorsed Nat Thornton, Manager, and stamped "Paid September 4, 1928." We hold that the evidence was properly admitted.

Ground 15 complains that the following evidence was admitted: "Exhibit 11—Voucher identified as follows: Federal Motor Truck Sales Corporation, Nat Thornton, City. Voucher No. 3. September 1928, September 4, advanced on account $550. Approved for payment, E. N. P." The evidence was properly admitted.

■ Ground 17 complains of the admission in evidence of the following writing: "Exhibit 14—Minutes of the Finance Committee, Aug. 13, 1928, identified as follows: 'Councilman Turner, Chairman Garage Committee, requests $5,000 to reconstruct ten Federal Trucks of Department.'" The objection was that "the

purported minutes were but a memorandum made by another person than the defendant J. E. Turner, and not in his presence, and pertained to a matter with which the defendant had no connection." A State's witness, Lawrence A. James, testified in part: "It is the original minutes of the finance committee of that date." This witness further testified: "You may term it just a memorandum of the transactions that came before the committee at the time. We term them minutes of the finance committee." We are inclined to think that the document was identified as the minutes in question. But however this may be, certain members of the finance committee testified that councilman Turner did appear before the committee and make the request for the $5,000 appropriation for repairing said trucks. In this connection we quote from *Hinkle* v. *Smith*, 127 *Ga.* 437 (4) (56 S. E. 464): "The overruling of defendant's objection to the introduction in evidence of the ledger kept by plaintiff's firm, if error, was harmless, as the entries therein only tended to prove facts already established by other uncontradicted evidence." We see no merit in this ground.

■ Ground 18 is not insisted upon. Ground 20 complains that the witness E. W. Pegram was allowed to testify as follows: "You ask me to give the full details of entering the final ending of the transaction on our books. Mr. Thornton was charged with $500 check on September 4th., I believe it was—I will see by the entry. That is our ledger-sheet September 4, and Mr. Thornton was charged with this $550 check." The objection was that the evidence was not material to any issue in the case "for the reason that it purports to relate to certain transactions by and between the witness and his employer, and is in no wise connected with the defendant." We hold that the objection is not good.

Ground 21 avers that the court erred in admitting in evidence the following testimony of E. W. Pegram: "Then on November 30 he (Thornton) was credited with $550 which was charged back against that. The $550 was charged back against a sale for the repairs on some trucks for the City of Atlanta—for repairs on ten trucks." The objection was that the evidence was irrelevant "for the reason that it related to a transaction solely between the witness and his employer, and in no wise related to any transaction with the defendant J. E. Turner." We hold that the evidence was relevant, and that there is no merit in the ground.

In ground 23 complaint is made of the admission of the following testimony of E. W. Pegram: "Now, on November 30th. Thornton was credited with $550; and that was to offset the amount which was advanced to him; . . it was credited just from his direction; and that is all I know about that." The same objection set out in ground 21 was made to this evidence. It was further objected that the evidence was hearsay. Neither objection is good.

The complaint in ground 24 is that the witness Pegram was allowed to testify in effect that the bid of the Federal Corporation was raised so as to cover the cost of the automobile delivered to the defendant, after he had testified that he received his information from Thornton. The objection was that "the evidence related to alleged transactions between others than the accused, and not in his presence, and with which he was not shown to have had any connection." We hold that the evidence was not objectionable for any reason assigned.

Ground 25 complains of the admission of the following evidence of Nat Thornton: "This is our invoice, a copy of our memorandum. I don't know as much about our books as I should. This is just our record of that transaction, as we entered it on our books." The objection was that the evidence was irrelevant "in that it related to a purported transaction between witness, his company, and the City of Atlanta, and in no wise related to any transaction with the defendant." We hold that this ground does not disclose reversible error.

In Ground 26 it is contended that the court erred in allowing the witness Thornton to testify that Mr. Baxter came to him and said: "Now, you increase this enough to take care of that car." I give instructions to deliver that car to Dr. Turner; I instructed Mr. Smith to do that, and I believe he actually got the car about August 31, somewhere about there." We have already held that this ground is not valid for the reason that prima facie a conspiracy was shown between the defendant and Baxter. The evidence is set out here in order that the ground may be better understood.

■ Ground 28 complains of the admission in evidence of "Exhibit 17—identified as a ledger of account of the Federal Motor Truck Sales Corporation with J. E. Turner, showing a debit of $550 on Aug. 4, 1928, and a credit of $550 on Sept. 1, 1928." The objection was that "the purported document came from wit-

ness's own files, and, therefore, was a self-serving document and inadmissible against the accused." The witness identifying the exhibit was Mr. Pegram, cashier for the Federal Corporation. The evidence was properly admitted.

Ground 29 complains of the admission of "Exhibit 18—identified as sheet No. 2, and identified as a ledger account of Federal Motor Truck Sales Corporation with Nat Thornton, the material portion of which shows a debit of $550 on September 4, 1928, and a credit of $550 on November 30, 1928." It was objected that the document was self-serving, and related to transactions between Thornton and his employer, and not with the accused or in his presence. The objections were not valid.

Ground 30 complains that the court allowed in evidence "Exhibit 16—identified as sheet No. 13, and purporting to be a ledger account of Federal Motor Truck Sales Corporation with the City of Atlanta." The objections set out in the preceding ground were also interposed to this evidence. We hold that the objections were properly overruled.

Ground 16 avers that the court erred in refusing to allow the witness Lawrence James, sworn for the State, to answer the following question: "I will ask you, not from hearsay, but from your own knowledge of the city's affairs and transactions, if as a matter of fact you had ten old trucks that cost you $3,400 apiece new, and they had been used eight or nine years and were not in condition to be put on the streets, but in 1928 could be put in good condition for $5,000 and do good work for five or six years longer, for the ten,—what would you think of that as a good business deal for the city?" The answer expected was: "I would say that it would be good business for the city to have the trucks reconditioned for the price named." In view of the fact that three witnesses gave substantially the opinion sought to be elicited from the witness Lawrence, we decline to hold that the trial judge erred in refusing to allow the witness James to answer the question set out in this ground. Nat Thornton testified: "As a matter of fact the deal I had with the city was an advantageous deal for the city." W. B. Hartsfield swore: "The Finance Committee of the City Council that was responsible for the expenditure of money thought this was a good proposition." E. B. Barrett testified: "I don't know whether those trucks are still running, those ten

trucks, but I think they are, and I think it was a good deal for the city, and thought so at the time, and have no reason since then to change my mind."

■ Ground 19 complains that the witness Ellis Barrett was not allowed to testify that he did not believe one word of certain things calculated to be derogatory to the defendant which he, the witness, had seen in newspapers. We do not think that the court's ruling was reversible error, especially in view of the fact that the same witness did testify upon cross-examination: "In spite of all I read in the newspapers, I believe that Dr. Turner is a man of good character."

■ Grounds 22 and 27 involve the same question, each of them complaining that certain evidence which was admitted was a repetition of evidence already before the court. Neither of these grounds discloses error.

■ Ground 31 complains that the court refused to rule out testimony that the defendant's character was bad, upon the ground that the witness testifying swore that he did not know the defendant's reputation in the community in which he lived. An inspection of this ground satisfies us that under the facts there presented, the court did not commit reversible error in refusing to rule out said testimony.

■ Ground 32 complains that the court erred in admitting in evidence an extract from the minutes of council of the City of Atlanta showing that the defendant was a member of the purchasing committee. The objection interposed was: "We object to these minutes of the purchasing committee; we would like for them to bring those members of the committee down here." This was not a valid objection to the admission of the evidence.

■ Ground 34 avers that the trial judge erred in allowing certain witnesses to testify in effect that the defendant had procured mechanics from the municipal garage to work on his private automobile, and parts from said garage for said automobile. Said testimony and similar testimony was admitted in rebuttal of the following portion of the defendant's statement to the jury: "I just want you to know I have been in the second ward for thirty-eight years, and run a drug-store at the corner of Glenn and McDaniel. I have been out there, and all the people around there can tell you that I have always dealt honestly with them, and that

is how I have always tried to deal with my fellow man." The alleged testimony as a whole tended to indicate that the defendant, who was chairman of the municipal garage ·committee, procured free work and free parts from the city garage. We quote from *Barnes* v. *State*, 24 *Ga. App.* 372 (4) (100 S. E. 788) : "In any criminal case evidence may be offered by the State to rebut any material fact asserted by the prisoner in his statement to the court and jury. *Doyle* v. *State*, supra; *Goolsby* v. *State*, 133 *Ga.* 427 (2) (66 S. E. 159). Good character is such a fact (*Shropshire* v. *State*, 81 *Ga.* 589, 8 S. E. 450), and an assertion of good character by the prisoner in his statement, or a narrative therein of facts, with an argument deduced therefrom to show his general good character, authorizes the introduction of evidence to the contrary." This ground does not disclose reversible error.

■ The thirty-fifth and last special ground complains of the court's refusal to grant counsel's motion to withdraw from the consideration of the jury that portion of the defendant's statement quoted in the preceding ground. The court did not abuse its discretion in overruling said motion.

In conclusion we hold that the court did not commit reversible error for any reason assigned in the record before us.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of sickness.*