48236. DAVIS v. THE STATE.
48237. WOOD v. THE STATE.

SUBMITTED MAY 30, 1973 — DECIDED SEPTEMBER 12, 1973 — REHEARING DENIED OCTOBER 5, 1973 —

*Glenn Zell,* for appellants.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Morris H. Rosenberg, Jack Mallard,* for appellee.

HALL, Presiding Judge. On the question whether both appellants were properly represented by the same attorney, Wood urges that the same attorney could not represent them free from conflicts of duty because, first, the two did not tell the same story in their statements to Hightower and Gundlach, and each should have been free to pursue his own defense; and, second, the indictment recited four prior convictions of Davis, for the same type crime charged, which served to prejudice Wood in the eyes of the jury. Davis urges essentially Wood's first point, with the added assertion that counsel should have known that Wood was the one to blame.

■ A defendant's right to the effective assistance of counsel under the Sixth Amendment is violated where over his objection he is represented by an attorney also charged with the representation of a codefendant whose interests are inconsistent with his. Glasser v. United States, 315 U. S. 60 (62 SC 457, 86 LE 680). See Annot., Two or More Accused—Separate Counsel, 34 ALR3d 470 (1972 Supp.). However there is no error in appointing only one attorney to represent two or more accused where there is no conflict in their interests or in their defenses. *Fambles v. State,* 97 Ga. 625 (25 SE 365). Moreover, to justify separate counsel, the conflict may not be merely theoretical or speculative, but must have some substantial basis in fact. United States v. Williams, 429 F2d 158 (8th Cir. 1970); United States v. Lovano, 420 F2d 769 (2d Cir. 1970).

The decided cases hold that conflict sufficient to require as a constitutional mandate that each defendant have separate counsel occurs where one accused's defense is that the other defendant and not he committed the crime; or that his degree of culpability is less than that of the other; or that in mitigation of his punishment the jury should consider that his codefendant was a bad influence on him. Perhaps other sufficient circumstances may be hypothesized as well; but the connecting theme in the situations in which a Sixth Amendment violation occurs is that counsel cannot in good faith vigorously pursue the defense of one defendant because it will bring him into conflict with his equivalent duty to avoid damaging the other. However, the test is not whether the defenses are "entirely consistent." Instead, the court should inquire, "Did the representation deprive either or both of the defendants of the undivided loyalty of counsel? Did counsel have to, or did he in fact, slight the defense of one defendant for that of another?" Sanchez v. Nelson, 446 F2d 849, 850 (9th Cir. 1971). Minor inconsistencies in the accounts related by codefendants to counsel, as their

individual versions of what actually occurred, will not necessarily create a conflict. See, Roberts v. United States, 348 FSupp. 563, 566 (E. D. Mo. 1972).

Applying these principles to the appeals here, we consider first whether the defendants had inconsistent defenses. Their unsworn statements at trial were entirely consistent with each other, both defendants claiming the car was loaned to them by an unidentified third man. That leaves their statements to Hightower and to Gundlach for consideration.

Their statements to Hightower, though inconsistent with each other, do not present their counsel with a conflict in presenting their defenses because both statements were wholly exculpatory of *both* defendants. If either statement had been true—that the car was the property of Wood's sister or Davis' friend—both defendants would have been exonerated of blame. Therefore, counsel was free vigorously to investigate and present either of these theories of defense without damaging either of the defendants. This is, therefore, not a situation in which a true conflict appears between the defendants, because their statements were not inculpatory of each other but were exculpatory of both.

The in-custody statements made separately by defendants to Gundlach give us more pause, particularly in light of Davis' assertion on appeal that counsel should have known Wood was the one at fault; but careful consideration of the record convinces us that there is no conflict here either. The only evidence at trial of the Davis statement at this point appears in the following colloquy: "Q. Now, what did he [Davis] have to say about the car? A. We asked him how he came to be in this stolen automobile. He stated to us that he had been downtown at a bar and that Mr. Wood had picked him up and that they had gone to drink some wine. Q. He said Mr. Wood picked him up? A. Yes, sir. Q. All right now. Did he say anything about the car being straight-wired? A. I asked him if he thought that was a bit unusual and he stated he did not."

The statement by Wood was reported as follows: "A. I asked him how he had come to be in possession of the automobile the same as I had asked Mr. Davis and he said to me that they had, he and Mr. Davis had been downtown at a bar and a third party, another subject whose name he didn't know, had stopped and picked them up and they had gone and, ridden around, had some drinks and this subject subsequently got out of the automobile. I asked him also if he had a key for the car, if there had been a key for it to start. He stated, I believe he stated he didn't know if there was a

key in there or not. And I asked him if he thought the car being straight-wired was unusual. He stated he didn't think anything of it."

Our inquiry here, of course, is whether these statements sufficiently indicate a conflict in the defense positions to require the appointment of separate counsel adequately to pursue them. Our conclusion on the entire record is that they do not. Carefully analyzed, the testimony of Gundlach about Davis' statement does not indicate that Davis categorically denied the presence of a third party in the car transaction, thus casting the blame wholly on Wood. Instead, the statement as reported has the flavor of claiming that Davis was a mere bystander or passenger, free himself from guilt. When we add to this impression the testimony of Hightower that Davis was badly intoxicated, and Davis' later unsworn statement to the general effect that at that time he was too "drunk," to use his own word, to comprehend much of what happened, we conclude that this statement did not constitute a genuine indication that Davis was founding his personal defense on the claim that at no time was anyone in the car but himself and Wood, and therefore Wood must have stolen the car. We are further persuaded to this conclusion by the fact that at trial Davis in his unsworn statement firmly cast his lot with that of Wood, claiming to remember the third man and his later departure, and therefore repudiated so much of his earlier statements as were in conflict with that. There was no conflict requiring reversal in the defendants' statements to Gundlach.

The following point is not fully developed by appellants, but by implication their briefs suggest that reversal is in order because in the early stages of their apprehension these appellants could not agree upon an explanation for their possession of this stolen auto, and their diverse stories no doubt damaged their credibility in the eyes of the jury. Therefore, they appear to argue if both appellants had had separate counsel they could have moved for a severance, and if successful, perhaps each defendant would have been able to exclude evidence of the statements different from his own given by the other. Without in any way considering or deciding whether such a possibility would constitute grounds for reversal, we nonetheless decide this point, to the extent to which they intended to raise it, against both appellants. Under Code § 38-306, once some evidence of a joint criminal undertaking has been presented, the out-of-court statements of one wrongdoer, even past the stage of commission of the crime and on through the *concealment* phase of

the undertaking, are admissible against the other (*Lindsey v. State,* 227 Ga. 48 (178 SE2d 848); *Chatterton v. State,* 221 Ga. 424 (144 SE2d 726); *Pressley v. State,* 205 Ga. 197 (53 SE2d 106)), even though that other is separately tried (*Coleman v. State,* 141 Ga. 731 (82 SE 228)), and even though the statements were made outside his presence. *Coker v. State,* 199 Ga. 20 (33 SE2d 171); *Murphy v. State,* 67 Ga. App. 626 (21 SE2d 454); *Turner v. State,* 43 Ga. App. 799 (160 SE 509). The constitutionality of this statute has been upheld by the United States Supreme Court. Dutton v. Evans, 400 U. S. 74 (91 SC 210, 27 LE2d 213). Therefore, not even separate counsel and separate trials could have enabled each of these defendants under the law of this state to avoid the impact of his codefendant's statements which contrasted in such revealing fashion with his own.

■ We turn next to the contention of Wood that he was denied the effective assistance of counsel because the indictment alleged that Davis had been convicted four times of the same offense and that if he had had a separate attorney he would have moved for a severance. Wood does not outline any fashion in which this severance would have benefited him. Under Code § 27-701 a joint indictment was proper on the facts here because the crime of auto theft is capable of being committed by one person alone and the evidence here showed it was committed by two persons acting jointly and with a common purpose. *Bullard v. State,* 34 Ga. App. 198 (128 SE 920). Under Code § 27-2101, when persons are jointly indicted for a felony less than capital, they may be tried jointly or separately in the discretion of the trial court. There is no rule of law in Georgia that prejudice requiring reversal accrues to one defendant by virtue of being tried with a repeat offender who has prior convictions alleged against him in the indictment, and we decline to create such a rule.

The sole remaining point is the contention of Davis that the evidence will not support conviction because he was only a passenger in the stolen automobile. If one is found in possession of recently stolen property and is unable to explain that possession to the satisfaction of the jury, then the jury is justified in inferring theft of the property in question. *Aiken v. State,* 226 Ga. 840 (178 SE2d 202). Two or more persons may be in joint possession of a stolen automobile, and a defendant may properly be convicted of automobile theft even where there is no evidence that he ever drove the car. *Morris v. State,* 72 Ga. App. 466 (34 SE2d 46);

*Cheatham v. State,* 57 Ga. App. 858 (197 SE 70). The evidence detailed above in this opinion authorized the verdict and there was no error in overruling Davis' new trial motion on this ground.

Finding no error on the record before us, we affirm.

*Judgment affirmed. Bell, C. J., Eberhardt, P. J., Pannell, Deen, Quillian, Clark and Stolz, JJ., concur. Evans, J., dissents.*

EVANS, Judge, dissenting. Defendants contend that the appointment of only one attorney to represent two defendants who are jointly indicted and jointly tried deprives them of certain rights, and, in effect, places the attorney in an inconsistent position with a possible conflict of interest. They contend that under their right to be represented by counsel, each was entitled to separate counsel.

Prior to 1971, defendants who were jointly tried had an absolute right to severance, and under the terms of the existing statute, Code § 27-2101, *when tried separately,* they could testify for or against each other.

But this statute was amended in 1971, and again in 1972 (Ga. L. 1971, pp. 891, 892; 1972, pp. 618, 619) and now, when indicted for a capital felony, where the state waives the death penalty, and in all cases less than capital, two or more defendants may be tried together in the discretion of the trial court. And a most important provision of the new statute is found in this language: ". . . in any event either defendant may testify for the other or on behalf of the State." We repeat, that prior to 1971, defendants jointly indicted could testify for or against each other only *when separately tried.*

It is not right or proper to appoint one attorney to represent two defendants who are jointly indicted and jointly tried. When appointed counsel investigates the case, and determines that one defendant can give valuable testimony on behalf of his co-defendant, although such testimony will help to convict the defendant so testifying, what is the attorney to do? Which client will he elect to save and which shall he throw to the wolves? Or shall he "lay low"—not use the testimony—hope for the best—and perhaps cause the conviction of both clients? It is all too obvious that the trial judge subjects appointed counsel to a possible conflict of interest—and places him in an embarrassing and untenable position—by requiring him to represent two joint defendants who are jointly tried under the present law. All attorneys are officers of the court and are responsible to the court, and must represent indigent clients when appointed. But they should not be imposed on by the trial judge by his appointment of one lawyer to represent

two defendants who are jointly tried.

Nor is the defendant accorded his constitutional right of being represented by counsel when his lawyer must be shared with another defendant, and when such counsel may have to decide to sacrifice John Doe in order to save Richard Roe.

Of course, there are times when several defendants voluntarily employ one lawyer to represent them, but that is a matter of their own doing, whereas here we are dealing with an indigent client who is the ward of the court, and is entitled to have his rights fully accorded and protected by the court.

The Miranda and Escobedo decisions by the United States Supreme Court were so liberal in favor of defendants prior to and during the arrest and commitment hearing, that a wave of resentment built up among the law-enforcing agencies in the several states. One of the results has been the concern by the General Assembly of Georgia with judicial reform, especially as to criminal law. Much of this new legislation takes valuable rights away from defendants and places the advantages with the state. Among these enactments is the law now under discussion, to wit: right of the trial judge to deny jointly indicted defendants the right of severance, and to require that defendants jointly indicted be jointly tried. Other legislation in this category is that which allows the trial of misdemeanor cases without grand jury indictment; allowing the trial jury to disperse during the trial of a case; allowing the state to appeal certain rulings in criminal cases; doing away with a defendant's unsworn statement to the jury; and where defendants are jointly tried, the jury strikes may be apportioned between all defendants.

Other legislation now on the agenda, and which will be proposed in the near future, includes the striking of venue requirements from the Constitution; reducing the number of jurors from twelve to six; and allowing the trial judge, instead of the jury, to sentence a defendant.

It is not my purpose to commend or criticize the foregoing legislation, but suffice to say that the trend in Georgia at this time is to take away rights that defendants in criminal cases have had for more than a hundred years.

In the present cases, I dissent from the majority opinion, and would reverse the trial court, because I do not believe the two defendants were fully accorded their right to counsel, when they had to share the one appointed counsel with each other.